Carl DORELIEN, Petitioner,

v.

**U.S. ATTORNEY GENERAL, John Ashcroft, Immigration and Naturalization Service, Respondents.**

No. 02–13587.

United States Court of Appeals, Eleventh Circuit.

Jan. 13, 2003.

Jeffrey A. Devore, Law Offices of Jeffrey A. Devore, P.A., West Palm Beach, FL, for Petitioner.

Michael P. Lindemann, Donald E. Ginsberg, U.S. Dept. of Justice/Office of Immigration Litigation, David V. Bernal, Barry J. Pettinato, Civ. Div., Washington, DC, for Respondents.

---

Before EDMONDSON, Chief Judge, and TJOFLAT, ANDERSON, BIRCH, DUBINA, BLACK, CARNES, BARKETT, HULL, MARCUS and WILSON, Circuit Judges.

BY THE COURT:

The Court having been polled at the request of one of the members of the Court and a majority of the Circuit Judges who are in regular active service not having voted in favor of it (Rule 35, Federal Rules of Appellate Procedure; Eleventh Circuit Rule 35–5), hearing En Banc is DENIED.

HULL, Circuit Judge, specially concurring in the denial of rehearing *en banc:*

In this immigration appeal, Dorelien has filed a petition for review of the BIA's final removal order. During the briefing stage, a motions panel of this Court denied Dorelien's motion for a stay of that removal order. The *en banc* Court has declined to rehear that denial; I concur for these reasons.

## I. TRADITIONAL INJUNCTIVE RELIEF

Even under the traditional injunctive relief standard for which the dissent advocates, Dorelien has not shown a substantial likelihood of success on his claim for discretionary relief.[1] In his petition for review in this Court, Dorelien does not

---

**1.** Under the traditional test for injunctive relief, an alien must prove that: (1) there is a substantial likelihood he would ultimately prevail on the merits; (2) he would suffer irreparable injury unless the injunction issued; (3) the threatened injury outweighed whatever damage the proposed injunction would cause the opposing party; and (4) the injunction, if issued, would not be adverse to

challenge his removability based on overstaying his visa. Instead, Dorelien claims that the IJ and BIA erred in denying him discretionary relief from removal under the Convention Against Torture ("CAT").[2] Based on extensive evidence, the IJ found, *inter alia,* that Dorelien "ha[d] failed to demonstrate that it is more likely than not that he would be subjected to torture if removed to Haiti." The BIA affirmed.

The motions panel properly denied Dorelien's motion to stop the INS from removing him because Dorelien has not shown *any* likelihood of success in overturning the IJ's fact findings or denial of wholly discretionary relief, both of which the BIA affirmed. Dorelien fails to satisfy both the pre-IIRIRA traditional standard for injunctive relief and IIRIRA's "clear and convincing evidence" standard.

As the IJ found, Dorelien lived in Haiti from birth in 1949 until 1995. He was a military leader from 1991 until 1994 during the Cedras military regime.[3] Due to his involvement in a massacre during that regime, Dorelien was convicted of mass murder, albeit in absentia. After the democratically elected President Aristide returned and the military was dismantled in 1994, Dorelien's wife and child remained in Haiti for some time and never were harmed, arrested, or mistreated by the Aristide government. Dorelien, a college-educated engineer, still owns a residence in Haiti and a share in a private engineering firm in Haiti; his wife still owns a day care center in Haiti. Dorelien's motion for a stay based on his torture claim under CAT does not satisfy even the traditional injunctive relief standard that applied pre-IIRIRA.

## II. REMOVAL PARADIGM SHIFT UNDER IIRIRA

Dorelien's motion likewise fails to meet IIRIRA's new "clear and convincing evidence" standard for injunctive relief. 8 U.S.C. § 1252(f)(2). Before discussing the dissent, it is important to outline IIRIRA's sweeping changes to immigration law and removal in particular.

IIRIRA embodies a paradigm shift in how aliens, like Dorelien, are removed. IIRIRA (a) repeals the automatic stay previously effective upon the mere filing of a petition for review in this Court; (b) entitles the INS to execute immediately the BIA's final removal order notwithstanding any appeal to this Court; and (c) most importantly, permits aliens to continue their appeals from abroad. *See* 8 U.S.C. § 1252, *et seq.*[4] As a result, the BIA's removal order against Dorelien is now a final judgment, which the INS has a right to execute immediately.

Under IIRIRA, removal now occurs after the BIA level of appellate review, and the alien continues his second level of appeal from abroad. In fact, under IIRIRA, many aliens no longer have a second level of appeal before this Court. *See, e.g., Balogun v. U.S. Atty. Gen.,* 304 F.3d 1303,

---

the public interest. *Zardui–Quintana v. Richard,* 768 F.2d 1213, 1216 (11th Cir.1985).

**2.** United Nations Convention Against Torture and Other Cruel, Inhumane or Degrading Treatment or Punishment, June 26, 1987, S. Treaty Doc. No. 100–200, 1465 U.N.T.S. 85.

**3.** Led by Lt. Gen. Raoul Cedras, the Cedras junta overthrew the democratically elected Aristide in 1991 and reigned during 1991–1994. Dorelien served as personnel director for the reportedly brutal Cedras military regime. During this period, so many Haitians reportedly were killed that the United States suspended aid to Haiti and froze the military regime's foreign assets.

**4.** *See also* 8 U.S.C. § 1252(b)(3)(B); *Moore v. Ashcroft,* 251 F.3d 919, 922 (11th Cir.2001) (finding case not moot following removal of alien based on "[n]oticeabl[e] absen[ce]" in post-IIRIRA immigration law of "any similar language removing federal review jurisdiction in the event an alien departs or is removed").

1307 (11th Cir.2002) (IIRIRA "eliminated [this Court's] jurisdiction to review any final order of removal against any alien who is removable by reason of a conviction for certain criminal offenses.") (quotation and citation omitted); *Moore v. Ashcroft,* 251 F.3d 919, 923 n. 5 (11th Cir.2001) (Under IIRIRA, this Court's "jurisdiction to review denials of discretionary relief is . . . limited.").

IIRIRA instituted these structural changes to rectify inordinate delays in removals.[5] Thus, removal after a final BIA removal order (i.e., one level of appeal) is the permitted norm. Indeed, Dorelien is uniquely situated to continue his second level of appeal from Haiti. Dorelien is not just a convicted mass murderer, but a fairly well-off one. He won the Florida Lottery in 1997, receiving $3.1 million to be paid in 20 annual installments of $159,000. Dorelien is represented by counsel and clearly has resources to continue his petition for review in this Court of his wholly discretionary claim after the INS removes him to Haiti.

### III. ENJOINING INS REMOVAL AFTER BIA AFFIRMANCE

In light of IIRIRA's changes, when an alien asks this Court to stop INS removal *after* the BIA's final removal order, that alien necessarily is seeking injunctive relief from a court. Whether an individual alien's motion is couched as a motion for "a stay" or "an injunction" of the BIA's final removal order, this Court in granting relief is preventing the INS's right to remove the alien and, in effect, enjoining INS action.[6] Thus, IIRIRA expressly prescribes that "no court shall enjoin the removal of any alien pursuant to a final order under this section unless the alien shows by clear and convincing evidence that the entry or execution of such order is prohibited as a matter of law." 8 U.S.C. § 1252(f)(2). An alien may couch his motion as a "motion for stay" of the BIA's final order to avoid this tougher IIRIRA standard. Nonetheless, an alien's post-IIRIRA motion for a stay of a final and immediately executable BIA removal order is effectively, and necessarily, seeking injunctive relief from this Court. Section 1252(f)(2) addresses the relief granted *by a court,* not the relief requested by an alien.

The dissent laments that "[a]pplying a heightened burden of proof" to a stay motion before a merits determination by this Court on an individual alien's petition for review requires this Court to have "full-scale briefing at the beginning of the appellate process before the petitioner has even received a copy of the administrative record." *See infra* at 1325; *see also Andreiu v. Ashcroft,* 253 F.3d 477, 482 (9th Cir.2001) (*en banc*). Similarly, the Ninth Circuit in *Andreiu* characterized the results that the adoption of a "clear and convincing evidence" standard would have

---

**5.** S.Rep. No. 104–249, at 7 (1996) ("Aliens who violate U.S. immigration law should be removed from this country as soon as possible. Exceptions should be provided only in extraordinary cases specified in the statute and approved by the Attorney General."); *see also INS v. St. Cyr,* 533 U.S. 289, 121 S.Ct. 2271, 2294, 150 L.Ed.2d 347 (2001) (Scalia, J., dissenting) (noting that IIRIRA was "concededly designed to *expedite* [alien] removal"). For example, removal proceedings against Dorelien began in July 1997 and have continued for over five years.

**6.** If an alien ultimately prevails on his petition for review of his individual removal order, this Court does not then enjoin removal, but instead reverses and vacates the BIA's removal order as to that alien. Post–IIRIRA, the main, if not only, time the injunction or stay issue now occurs in an individual alien's case is when the alien seeks to stop the INS from executing the BIA's final removal order as to that alien during an appeal to this Court. Post–IIRIRA, any so-called "stay" of a final removal order by this Court is an injunction (whether preliminary or permanent) of INS action.

as "absurd," postulating that adoption of such a standard would "effectively require the automatic deportation of large numbers of people with meritorious claims." *Andreiu,* 253 F.3d at 482. These are understandable, sympathetic arguments.

The problem, however, is that those arguments ignore Congress's policy choice to eliminate delays by (1) implementing INS removal after the first level of appeal before the BIA and (2) allowing the alien to continue his second round of appeal from abroad. While the dissent and the Ninth Circuit are free to take umbrage with policy choices enacted by Congress, unless such congressional action runs afoul of the Constitution, courts cannot, and must not, engage in strained interpretations of statutes to circumvent a congressional choice with which they disagree.[7] A court's "function is to apply statutes, to carry out the expression of the legislative will that is embodied in them, not to 'improve' statutes by altering them." *Wright v. Sec'y for the Dep't of Corrs.,* 278 F.3d 1245, 1255 (11th Cir.2002) (citing *Badaracco v. Comm'r of Internal Revenue,* 464 U.S. 386, 398, 104 S.Ct. 756, 78 L.Ed.2d 549 (1984) ("Courts are not authorized to rewrite a statute because they might deem its effects susceptible of improvement.")).

## IV. STATUTORY ANALYSIS

In arguing against a heightened standard to stop removal after the first level of appeal before the BIA, the dissent disregards the plain meaning of "enjoin" and engages in a complicated statutory analysis to conclude that "enjoin" in § 1252(f)(2) does not encompass "a stay."[8] As outlined in *Weng v. U.S. Attorney General,* this Court correctly concluded that "the plain language of 'enjoin[ing]' removal of an alien ... encompasses the act of staying of removal." 287 F.3d 1335, 1337–38 (11th Cir.2002) (alteration in original). The dissent's attacks on *Weng*'s conclusion lack merit for numerous reasons.

First, the dissent's analysis is internally inconsistent. It posits that "enjoin" in § 1252(f)(2) does not encompass "a stay" of removal under IIRIRA but then argues that the traditional *injunctive* relief standard applies to Dorelien's motion for a stay. This advocacy for the traditional *injunctive* relief standard actually underscores (a) how commonly pre-IIRIRA motions for stays of removal were construed and treated as motions for preliminary injunctions[9] and (b) why "to enjoin" plainly encompasses the relief whereby a court

---

**7.** Such restraint is warranted particularly in the immigration context where the Supreme Court repeatedly has admonished that "the power to expel or exclude aliens [i]s a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." *Fiallo v. Bell,* 430 U.S. 787, 792, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977) (quotation and citations omitted).

**8.** In fashioning its arguments, the dissent essentially adopts wholesale the arguments made by the Ninth Circuit in *Andreiu v. Ashcroft,* 253 F.3d 477, 479–82 (9th Cir.2001) (*en banc*). Thus, an examination of the dissent in this case is the functional equivalent of deconstructing the Ninth Circuit's analysis in *Andreiu.* I focus on the Ninth Circuit's opin-ion in *Andreiu* because the Second and Sixth Circuits did not provide any new analysis regarding the applicability of the "clear and convincing evidence" standard in § 1252. *Compare Mohammed v. Reno,* 309 F.3d 95, 98–99 (2d Cir.2002) ("We agree with the Ninth and Sixth Circuits for all of the reasons explained in the Ninth Circuit's in banc decision in *Andreiu.*") *and Bejjani v. INS,* 271 F.3d 670, 687–88 (6th Cir.2001) (relying exclusively on and adopting the analysis in *Andreiu* ) *with Andreiu,* 253 F.3d at 479–82.

**9.** "[C]ourts have regularly used the[ ] terms [enjoin and stay] interchangeably or to indicate the act of enjoining includes the act of staying," *Weng,* 287 F.3d at 1338, and "in the limited situation where stays were not automatic in pre-IIRIRA cases, courts would treat

stops INS removal, even if a court or a movant seeks to avoid § 1252(f)(2) by using the term stay.

Second, the dissent argues that "enjoining" removal does not encompass "staying" removal because a stay is only "temporary" and "inherently ephemeral." Preliminary injunctions are equally temporary; the relief Dorelien requests is purely injunctive in nature, whether temporal or permanent. This "temporary" distinction also undermines, if not defeats, IIRIRA's new statutory scheme whereby removal occurs after the first level of appeal before the BIA, and the alien must continue his second level appeal from abroad, unless he shows by clear and convincing evidence that his removal is prohibited by law.

Third, to apply the traditional preliminary injunction standard to discretionary stays creates internal inconsistency within IIRIRA itself. The dissent would have courts apply the pre-IIRIRA preliminary *injunctive* standard to Dorelien's request for relief notwithstanding the new "clear and convincing evidence" standard contained in § 1252(f)(2). In so doing, the dissent would apply a traditional preliminary injunctive relief standard that, by the express terms of IIRIRA, is inapplicable to all other forms of injunctive relief granted in individual immigration cases. Such

inconsistency creates the anomalous result that, *ceteris paribus*, an alien who requests injunctive relief under IIRIRA will be evaluated under a much stricter standard than an alien who seeks a stay.

This potential for inconsistency leads to a related point. In a judicial system where equitable and legal actions and remedies have merged, there is little, if any, ascertainable functional difference between a stay and a preliminary injunction, particularly in the context of immigration. This Court consistently has applied a linguistic identity between a stay and preliminary injunctive relief in immigration cases. *See Okongwu v. Reno*, 229 F.3d 1327, 1329 (11th Cir.2000) (noting that Court had granted alien's motion for "preliminary injunctive relief, construed as a motion for stay of deportation"); *Zardui–Quintana v. Richard*, 768 F.2d 1213, 1215–16 & n. 7 (11th Cir.1985) (concluding that request for a judicial stay of deportation in an immigration case was akin to and should be treated as a request for injunctive relief).[10]

Fourth, the dissent argues that the language of § 1252, particularly § 1252(b)(3)(B) and (f), forecloses the possibility of applying the "clear and convincing evidence" standard to Dorelien's motion for a stay.[11] The dissent stresses how

---

aliens' motions for stays of deportation as discretionary motions for injunctive relief." *Id.* (citing *Jenkins v. INS*, 32 F.3d 11, 14–15 (2d Cir.1994) ("This court will treat an application for a discretionary stay as a request for injunctive relief."), *overturned on other grounds, Aguirre v. INS*, 79 F.3d 315 (2d Cir. 1996); *Arthurs v. INS*, 959 F.2d 142, 143–44 (9th Cir.1992) (looking to whether "serious legal question" was presented when reviewing motion to stay) (citing *Artukovic v. Rison*, 784 F.2d 1354 (9th Cir.1986)); *Ignacio v. INS*, 955 F.2d 295, 299 & n. 5 (5th Cir.1992) (applying "the same four-factor balancing test" to both judicial stay of deportation of alien and request for injunctive relief); *Reid v. INS*, 766 F.2d 113, 116 n. 9 (3d Cir.1985) (recognizing "the possibility that in extraordi-

nary cases relief in the nature of a stay might be available in the court of appeals pursuant to the All Writs Act"); *Zardui–Quintana v. Richard*, 768 F.2d 1213, 1215–16 & n. 7 (11th Cir.1985) (observing that request for a judicial stay of deportation in habeas case was akin to and should be treated as a request for injunctive relief)).

**10.** *See supra* note 9.

**11.** Noticeably absent from this statutory analysis, however, is any mention of how IIRIRA's new statutory scheme effectuates INS removal after the BIA's final removal order as the norm and substantially restricts judicial review in the second level of appeal.

§ 1252(f)(1) uses the term "enjoin and restrain" and how 1252(f)(2) uses only the term "enjoin." Totally different objects, however, follow those verbs, which undercuts the proposed comparison. Section 1252(f)(2) is entitled "Particular cases" and addresses enjoining a discrete INS action against a single alien, to wit: "no court shall enjoin the removal of any alien pursuant to a final order." [12] No additional language is necessary to convey the intended prescription. A court usually does not "restrain" removal in any event.

In stark contrast, the objects of the verbs "enjoin and restrain" in § 1252(f)(1) are legislative enactments. Section 1252(f)(1) provides that a court shall have no jurisdiction "to enjoin or restrain the operation of the provisions of Part IV of this subchapter." Given the considerable differences in the two subsections, the dissent's attempted comparison between the two sections is out of context and not particularly helpful.

The dissent also mentions that § 1252(b)(3)(B) uses the word "stay" and argues if Congress had intended "enjoin" to include "stay," it would have written § 1252(f)(2) to read "enjoin or stay." The problem with this comparison is that § 1252(b)(3)(B) is addressing the pre-IIRIRA automatic stay that arose by operation of law, without any court action, upon the mere filing of a petition for review. Thus, § 1252(b)(3)(B) necessarily had to use the word "stay" in providing that service of the petition no longer stays removal. There was no similar need to include

"stay" in § 1252(f)(2). This is especially so given the long-standing linguistic identity between stays and injunctions, engrained to such an extent that the traditional *injunctive* relief standard was applied universally to motions for stays in the pre-IIRIRA immigration context.[13]

The dissent's statutory analysis misses the point of the plain language in the statute. The outcome of an alien's appeal cannot depend on whether he asks for a stay or an injunction or whether a court's order uses the term "stays" INS removal or "enjoins" INS removal. Instead, the focus in § 1252(f)(2) is on the nature of the relief a *court* is granting, irrespective of the nomenclature used. The underlying issue is whether the court is granting injunctive relief. "[N]o court shall enjoin ... removal" encompasses Dorelien's motion because stay relief is quintessential injunctive relief. 8 U.S.C. § 1252(f)(2). And because stay relief is injunctive relief, the "clear and convincing evidence" standard in § 1252(f)(2) applies.

This leads to a final point. Pre–IIRIRA, the INA did not contain a statutory standard for staying INS removal, but courts uniformly applied the traditional injunctive relief standard. That IIRIRA adopted an express statutory standard for injunctive relief, specifically as to any individual alien's removal order, evinces that Congress expressly sought to heighten the standard for court intervention in INS removal after a final order by the BIA and to have aliens continue any subsequent

---

**12.** It is not disputed that the BIA affirmance is treated as a final order of removal under IIRIRA. 8 C.F.R. § 241.1(a) (2002) ("An order of removal made by the immigration judge at the conclusion of proceedings under section 240 of the [Immigration and Naturalization] Act shall become final ... [u]pon dismissal of an appeal by the Board of Immigration Appeals.").

**13.** As the *Weng* panel noted, Congress is presumed to have been knowledgeable of the established pattern of courts interpreting motions to stay as requests for injunctive relief, and legislated with it as a backdrop when it drafted § 1252(f)(2). *See Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 184–85, 108 S.Ct. 1704, 100 L.Ed.2d 158 (1988). *See also supra* note 9.

appeals from abroad absent an alien satisfying that heightened standard.

In sum, § 1252(f)(2) begins with the clear admonition of "notwithstanding any other provision of law" and then provides that "no court shall enjoin the removal of any alien pursuant to a final order" unless the alien meets the clear and convincing evidence standard. 8 U.S.C. § 1252(f)(2). There is nothing ambiguous about this language. If this Court stops the INS's removal of Dorelien, then this Court is granting injunctive relief, whether Dorelien couches his motion as a motion for a stay or a motion for a preliminary injunction. Because the relief the Court necessarily grants is injunctive relief, "no court shall enjoin removal of any alien pursuant to a final order" unless the alien satisfies IIRIRA's heightened standard in § 1252(f)(2).

For these and the additional reasons outlined in *Weng,* the *en banc* Court properly denied rehearing.

BARKETT, Circuit Judge, dissenting from the denial of rehearing en banc:

I believe the issue in this case merits *en banc* consideration. Dorelien requests a temporary stay of an INS removal order while his appeal is considered. Prior to *Weng v. U.S. Atty. Gen.,* 287 F.3d 1335 (11th Cir.2002), Dorelien's motion for a temporary stay would have been reviewed under the traditional test outlined in *Zardui–Quintana v. Richard,* 768 F.2d 1213, 1216 (11th Cir.1985). Instead, *Weng* extends the "clear and convincing evidence" standard for *injunctions* imposed under 8 U.S.C. § 1252(f)(2) of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") to *temporary stay orders* pending appeal. *Weng,* 287 F.3d at 1338. This expansion of IIRIRA runs counter to the plain language of the act, the statutory context of § 1252(f)(2), and the decision of every other circuit court to have considered the question. *See Mohammed v. Reno,* 309 F.3d 95 (2nd Cir.2002); *Andreiu v. Ashcroft,* 253 F.3d 477, 480 (9th Cir. 2001) (*en banc* ); *Bejjani v. INS,* 271 F.3d 670, 688 (6th Cir.2001); *Lal v. Reno,* 221 F.3d 1338 (7th Cir.2000) (unpublished opinion). Accordingly, I believe that *en banc* review of *Dorelien* is warranted to reconsider both *Weng* and the appropriate reach of IIRIRA.

I. *Weng* Incorrectly Held that IIRIRA's "Clear and Convincing Evidence" Standard Applies to Temporary Stay Motions

*A. Statutory Interpretation*

*1. Plain Language*

As is well known, the starting point for all statutory interpretation is the language of the statute itself. *United States v. DBB, Inc.,* 180 F.3d 1277, 1281 (11th Cir. 1999) (citing *Watt v. Alaska,* 451 U.S. 259, 265, 101 S.Ct. 1673, 68 L.Ed.2d 80 (1981)). We must assume that Congress used the words in a statute as they are commonly and ordinarily understood, and we read the statute to give full effect to each of its provisions. *United States v. McLymont,* 45 F.3d 400, 401 (11th Cir.1995) (*per curiam* ).

The plain language of § 1252(f)(2) as commonly used and understood does not support the broad interpretation adopted in *Weng. See Weng,* 287 F.3d at 1338. Section 1252(f)(2) states that:

> Notwithstanding any other provision of law, no court shall enjoin the removal of any alien pursuant to a final order under this section unless the alien shows by clear and convincing evidence that the entry or execution of such order is prohibited as a matter of law.

8 U.S.C. § 1252(f)(2). The operative term for our purposes is the word "enjoin." Specifically, the question that *Weng* en-

deavored to answer was whether the term "enjoin," as employed in § 1252(f)(2), encompasses the term "stay." *See Weng,* 287 F.3d at 1336.

As the *Weng* panel noted, *see id.* at 1338, Black's Law Dictionary, 529 (6th ed.1990), defines "enjoin" as a verb that means "[t]o require; command; positively direct. To require a person, by writ of injunction, to perform, or to abstain or desist from, some act." Nowhere in this definition is there any reference to the word "stay," which Black's classifies as a verb meaning "[t]o stop, arrest, or forbear. To 'stay' an order or decree means to hold it in abeyance, or refrain from enforcing it." *Id.* at 1413.

The definitions of the two verbs differ, as do their common meaning and usage. "Enjoin" means to command a person to do or not do some act. The term has an active and continuing impact on the person who would otherwise act. *See Mohammed,* 309 F.3d at 99 (stating that the term "enjoin" in § 1252(f)(2) "applies to a permanent prohibition"). In contrast, the definition of "stay" does not focus on the command itself, but instead on its temporary nature. To stay an INS removal order means only to hold it in abeyance pending some future instruction. Unlike the verb "to enjoin," the verb "to stay" is inherently ephemeral.

The difference in the definitions of "enjoin" and "stay" mirrors the difference in their common legal usage. One would not refer to the granting of a stay pending appeal as the granting of an injunction. The *verb* "enjoin" (or the *noun* "injunction") is simply not used interchangeably with the *noun* "stay." *See Andreiu,* 253 F.3d at 478 (explaining that "as a matter of statutory construction, … the term 'enjoin' in this context, is not equivalent to the term 'stay' ").

Congress could have used the word "stay," as it has done in other contexts, but it chose instead to use the precise verb "enjoin" in the text of § 1252(f)(2). Our role is not to second-guess Congress's drafting choices. Rather, "[o]ur function is to apply statutes, to carry out the expression of the legislative will that is embodied in them, not to 'improve' statutes by altering them." *Wright v. Secretary for Dept. of Corrections,* 278 F.3d 1245, 1255 (11th Cir.2002) (citing *Badaracco v. Comm'r of Internal Revenue,* 464 U.S. 386, 398, 104 S.Ct. 756, 78 L.Ed.2d 549 (1984) ("Courts are not authorized to rewrite a statute because they might deem its effects susceptible of improvement.")). We must interpret the statute as written. *See id.* at 1255. And based on the precise words used in § 1252(f)(2), the "clear and convincing evidence" standard applies *only* when a court seeks to "enjoin the removal of any alien" *not* when it stays an order of removal while it considers the merits of an appeal. 8 U.S.C. § 1252(f)(2).

### 2. Statutory Context

In addition to the words themselves, we must also consider their statutory context. *United States v. McLemore,* 28 F.3d 1160, 1162 (11th Cir.1994) (citation omitted); *see also Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources,* 532 U.S. 598, 628–29, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001) ("[W]e have not treated Black's Law Dictionary as preclusively definitive; instead, we have accorded statutory terms, including legal 'terms of art,' a contextual reading."). The statutory context of IIRIRA demonstrates that § 1252(f)(2) was not meant to apply to temporary stay orders while an appeal is pending.

Section 1252(f), entitled "Limit on Injunctive Relief," places limits on a court's ability to prohibit the INS from removing aliens and contains two subsections. The first, entitled "In general," states that "no

court (other than the Supreme Court) shall have jurisdiction or authority to *enjoin or restrain* the operation of the provisions of part IV of this subchapter...." 8 U.S.C. § 1252(f)(1) (emphasis added). This provision makes it clear that Congress did not consider the terms "enjoin" and "restrain" to be synonymous. *See Walters v. Metro. Educ. Enters., Inc.,* 519 U.S. 202, 209, 117 S.Ct. 660, 136 L.Ed.2d 644 (1997) ("Statutes must be interpreted, if possible, to give each word some operative effect."). The second part of § 1252(f) is entitled "In particular" and limits courts' ability to override a final order under IIRIRA. *See* 8 U.S.C. § 1252(f)(2). As previously noted, § 1252(f)(2) states that "no court shall enjoin the removal of any alien pursuant to a final order...." Notably, this section employs only the word enjoin—not "enjoin or restrain," as § 1252(f)(1) does, or "enjoin or stay." Congress's use of the term enjoin, standing alone, must be presumed intentional. *See City of Columbus v. Ours Garage and Wrecker Serv., Inc.,* 536 U.S. 424, 122 S.Ct. 2226, 2228, 153 L.Ed.2d 430 (2002) (citing *Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983)) ("where particular language is included in one section of a federal statute but omitted from another, Congress is generally presumed to have acted intentionally and purposely"). Accordingly, § 1252(f)(2) *necessarily* refers to a narrower range of judicial action than is implicated under § 1252(f)(1), which employs the phrase "enjoin or restrain."

This logic is important. Once it becomes clear that the term enjoin does not refer to the full range of judicial action,

the argument presented in *Weng*—that "enjoin" as applied in § 1252(f)(2) encompasses stay orders—loses its coherence. *See Weng,* 287 F.3d at 1338. As stated in a recent Second Circuit decision, "when Congress pointedly uses both words in one subsection and then uses only the term 'enjoin' in an adjacent subsection, there is an implication that 'restrain' is used in (f)(1) to refer to an interim prohibition, and that the omission of 'restrain' in (f)(2) therefore makes this subsection inapplicable to such a prohibition." *Mohammed,* 309 F.3d at 99. When read in the statutory context of § 1252 as a whole, it is clear that subsection (f)(2) does not extend to temporary stay orders.

Additional support for this conclusion is found in § 1252(b)(3)(B). This section is the only provision in IIRIRA that specifically refers to the term "stay." It demonstrates that when Congress intended to refer to stay orders in the statute, it did so explicitly. Section 1252(b)(3)(B) states, "[s]ervice of the petition on the officer does not stay the removal of an alien pending the court's decision on the petition, unless the court orders otherwise." Here, the term "stay" is used as a verb and describes the act of placing a hold on deportation pending the outcome of a petition for review. Had Congress intended to convey the same meaning in § 1252(f), it would have written subsection (f)(2) to limit courts' power to "enjoin *or stay*" removal.[1] *See, e.g., Mohammed,* 309 F.3d at 99 ("If Congress wanted to apply a heightened standard to a stay pending appeal, it would have used the word 'stay' in

---

1. In addition, if it were true that § 1252(f)(2) truly encompassed stay orders as well as injunctions, then § 1252(b)(3)(B) would be reduced to mere surplusage. If § 1252(f)(2) requires a showing by clear and convincing evidence that the final order is prohibited as a matter of law, then obviously stays are not automatic and there is no reason for

§ 1252(b) to belabor the point. This would be true by definition. Again, we should not read IIRIRA in a manner that reduces any of its provisions to surplusage. *See Dunn v. Commodity Futures Trading Comm'n,* 519 U.S. 465, 472, 117 S.Ct. 913, 137 L.Ed.2d 93 (1997).

[§ 1252](f)(2) ... indeed, it would likely have included such a standard in section [§ 1252](b).").

In sum, § 1252(f)(2) does not impose a "clear and convincing evidence" standard on temporary stays of removal. This is made clear both in the plain language of § 1252(f)(2) and from a contextual reading of the provision within the general structure of IIRIRA. Because a straightforward statutory interpretation of § 1252(f)(2) dictates that *Weng* was wrongly decided, this Court should consider *Dorelien en banc* to delineate the proper standard of review for temporary stay orders.

### B. The Terms "Enjoin" and "Stay" Have Not Been Used Interchangeably in Our Case Law.

As a fallback argument, the *Weng* panel advances the proposition that the jurisprudence of this Court has established that the terms "enjoin" and "stay" are interchangeable. *Weng*, 287 F.3d at 1338 ("courts have regularly used these terms interchangeably"). However, none of the cases cited in *Weng* provides persuasive support for the idea that a "stay" and an injunction are in any way equivalent. *See id.* at 1338 n. 4.

For example, *Weng* cites the passage in *Okongwu v. Reno*, 229 F.3d 1327, 1329 (11th Cir.2000), that states, "we subsequently granted Okongwu's motions to proceed on appeal *in forma pauperis* and for preliminary injunctive relief, construed as a motion for stay of deportation." *Okongwu* addressed the issue of whether the district court had subject matter jurisdiction over Okongwu's petition for habeas corpus under 28 U.S.C. § 2241. Notably, the case did not address the merits of Okongwu's motion for preliminary injunctive relief. But in the initial discussion of the case, the *Okongwu* panel did note two points relevant to the present inquiry: 1)

we had previously granted Okongwu's motion for preliminary injunctive relief; and 2) we construed this motion as a motion for stay of deportation. *Okongwu*, 229 F.3d at 1329. In short, we treated Okongwu's motion for a preliminary injunction as a motion for a stay. This does *not* indicate that the two terms are somehow interchangeable, but rather that they are distinct and should be treated as such. We construed Okongwu's motion for preliminary injunctive relief as a stay motion *precisely because* a motion for preliminary injunctive relief was not the appropriate vehicle for the remedy Okongwu sought. Therefore, *Okongwu* does not stand for the proposition that "enjoin" and "stay" are interchangeable terms.

*Weng* next cites *Zardui–Quintana*, 768 F.2d at 1215 n. 7, in support of the "interchangeability" argument. *Weng*, 287 F.3d at 1338 n. 4. *Zardui–Quintana* is a pre-IIRIRA case that involved forty-four Mariel Cubans. In it, we addressed the propriety of the district court's grant of a temporary restraining order ("TRO") against the INS district director's denial of a motion to stay deportation. *See Zardui–Quintana*, 768 F.2d at 1215 n. 7. We found that the district court abused its discretion in granting the TRO because the INS district director did not have authority to grant stays of deportation in the first instance. *Id.* In a footnote, we explained that we would treat the district court's TRO as a preliminary injunction "because it granted the petitioners the very affirmative relief they sought before the district director, a stay of deportation." *Id.*

*Weng* posits that *Zardui–Quintana* stands for the proposition that a "request for a judicial stay of deportation in [a] habeas case [is] akin to and should be treated as a request for injunctive relief." *Weng*, 287 F.3d at 1338. But this is inac-

curate. What *Zardui–Quintana* states is that a preliminary injunction, rather than a TRO, is the technically appropriate vehicle for a district court to employ when a party seeks affirmative relief from an INS action. *Zardui–Quintana*, 768 F.2d at 1215 n. 7. The case did *not* involve a "request for judicial stay of deportation," *Weng*, 287 F.3d at 1338, it involved a request for an injunction against an action by the district director of the INS. *Id.* Nowhere in *Zardui–Quintana* does the court even intimate that a stay motion is "akin to and should be treated as" an injunction.

Nor do the two non-immigration cases cited in *Weng*, 287 F.3d at 1338 n. 4, advance this argument. The first, *Spivey v. Board of Pardons and Paroles*, 279 F.3d 1301, 1304 n. 3 (11th Cir.2002), is a capital case that states in a footnote, "a preliminary injunction, ha[s] the necessary effect of a stay of execution." Again, this does not imply that an injunction and a stay are interchangeable for all purposes. *Spivey* states only that in a capital case, a preliminary injunction has the same *effect* as would a stay of execution. *Id.* But the argument against *Weng* is *not* that a "stay order" and a "preliminary injunction" cannot have the same effect. Rather, it is the more precise point that Congress did not intend that the two remedies be deemed equivalent under § 1252(f)(2). That the two may have the same effect in some circumstances is irrelevant. Our inquiry into Congress's use of the word "enjoin" in § 1252(f)(2) does not focus on effect, but on *meaning*. *Spivey* neither contends that "stay" and "enjoin" are *per se* interchangeable, nor sheds any light on the meaning of the term "enjoin."

The other non-immigration case cited in *Weng*, *Jove Eng'g, Inc. v. IRS*, 92 F.3d 1539, 1546 (11th Cir.1996), is similarly unsupportive. See *Weng*, 287 F.3d at 1338 n. 4. It is true that *Jove* states, "we have characterized the automatic stay of 11 U.S.C. § 362(a) as 'essentially a court ordered injunction.'" *Jove*, 92 F.3d at 1546 (quotation omitted). However, in the very next sentence *Jove* adds that "[a]lthough essentially a court-ordered injunction, *the automatic stay* nevertheless is actually a legislative creation with unique properties different from court-ordered injunctions." *Id.* (emphasis added). This does not imply that "to stay" and "to enjoin," or even a stay order and an injunction, are interchangeable. Rather, it illustrates the point that an automatic stay order is *not* equivalent to an injunction.[2] Explicitly, "[c]ourts of appeal have an independent role in assessing the intent of Congress in its enactment of a statutory provision, such as the automatic stay, which is different from the assessment of a district court's specific order, such as an injunction." *Id.* Far from indicating that "stay" and "enjoin" are interchangeable, *Jove* makes it clear that the two terms, as well as their remedial analogs, are separate and distinct.

As the forgoing illustrates, our circuit's case law has not "used [the terms 'stay' and 'enjoin'] interchangeably or [indicated] the act of enjoining includes the act of staying." *Weng*, 287 F.3d at 1338. With no reason to suppose that the terms have been used interchangeably, it is hard to comprehend how Congress may be "presumed to be knowledgeable of this established pattern of interpretation treating motions to stay as requests for injunctive relief." *Id.* at 1338–39 (citing *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 184–85, 108 S.Ct. 1704, 100 L.Ed.2d 158 (1988)).

---

**2.** A major premise of the *Jove* opinion is the uniqueness of an automatic stay under § 362(a). The use of the term stay in the *Jove* context is arguably inapposite to that of a stay order in an immigration case.

No such pattern existed prior, or subsequent, to the passage of IIRIRA. Even assuming *arguendo* that the text of § 1252(f)(2) is not clear and the section does not apply solely to injunctions, the panel's backup argument in *Weng,* that the two remedies may be used interchangeably, fails. Therefore, we should consider *Dorelien en banc.*

## II. *Weng* Created a Circuit Split

No other circuit court has held that the "clear and convincing evidence" standard imposed under § 1252(f)(2) applies to stay motions. Rather, every circuit court to consider the issue has explicitly held that it does not. *See Mohammed,* 309 F.3d at 100; *Andreiu,* 253 F.3d at 480; *Bejjani,* 271 F.3d at 688; *Lal,* 221 F.3d at 1338. While none of these opinions is binding upon this Court, it is notable that our sister courts' disagreement with *Weng* is both unmistakable and unanimous.

## III. This Is an Issue of Unique and Great Importance Warranting *En Banc* Review

Applying a heightened burden of proof to temporary stays of deportation will have a unique effect on a great number of litigants and, therefore, warrants *en banc* review of *Weng.* Under *Weng,* we must apply the same standard to a temporary stay pending appeal as to the merits of that appeal. This places the petitioner for a temporary stay in an untenable situation. The *Weng* decision requires this Court to decide the merits of the case at the outset, based upon the petitioner's application for a temporary stay. And a decision on the merits "would require full-scale briefing at the beginning of the appellate process before the petitioner has even received a copy of the administrative record." *Andreiu,* 253 F.3d at 482. While the IIRIRA does authorize appeals from abroad, it is unfair to impose this Herculean task upon petitioners who might have prevailed on the merits if they had been afforded the benefit of a full record. Thus, the unique posture of the petitioners in this type of case makes the approach under *Weng* additionally unjust and this issue warrants *en banc* consideration.

The *en banc* court should reconsider the standard for granting temporary stays pending appeal because, in the words of Federal Rule of Appellate Procedure 35, this issue "involves a question of exceptional importance." F.R.A.P. 35. Eleventh Circuit Rule 35–3, our companion to F.R.A.P. 35, directs counsel as follows:

A petition for *en banc* consideration, whether upon initial hearing or rehearing, is an extraordinary procedure *intended to bring to the attention of the entire court a precedent-setting error of exceptional importance in an appeal or other proceeding,* and, with specific reference to a petition for *en banc* consideration upon rehearing, is intended to bring to the attention of the entire court a panel opinion that is allegedly in direct conflict with precedent of the Supreme Court or of this circuit.

11th Cir. R. 35–3 (emphasis added). *Dorelien* involves exactly the type of precedent-setting error Rule 35–3 is intended to address.

For the forgoing reasons, I dissent from the Court's denial of rehearing *en banc* in this case.