**[PUBLISH]**

# IN THE UNITED STATES COURT OF APPEALS

# FOR THE ELEVENTH CIRCUIT

—————————————

**No. 04-15666**

—————————————

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 1, 2005
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-20161-CV-JLK

MARIE JEANNE JEAN,
in her individual capacity, and as
parent and legal guardian for minors
VLADIMY PIERRE and MICHELDA PIERRE,

Plaintiff-Appellant,

LEXIUSTE CAJUSTE,

Plaintiff-Appellant,

versus

CARL DORELIEN,

Defendant-Appellee,

LUMP SUM CAPITAL, LLC,
a Maryland limited liability company,

Defendant-Appellee.

**Appeal from the United States District Court
for the Southern District of Florida**

———————————————————

**(December 1, 2005)**

Before TJOFLAT and BARKETT, Circuit Judges, and MILLS[*], District
Judge.

**BARKETT, Circuit Judge:**

Lexiuste Cajuste and Marie Jeanne Jean, both in her individual capacity and
as parent and legal guardian for minors Vladimy and Michelda Pierre (collectively
"Plaintiffs") appeal the district court's orders dismissing their claims under the
Alien Tort Claims Act ("ATCA"), 28 U.S.C. § 1350, the Torture Victim Protection
Act ("TVPA"), 28 U.S.C. § 1350 note, Pub. L. No. 102-256 (1992), and the
Florida Uniform Fraudulent Transfer Act ("FUFTA"), Florida Statutes § 726.101,
et seq.

Lexiuste Cajuste alleges in a second amended complaint that Carl Dorélien,
a Colonel in the Haitian Armed Forces and Chief of Personnel from 1992 to 1994
was responsible for subjecting him to torture, arbitrary detention, and cruel,

---

[*]Honorable Richard Mills, United States District Judge for the Central District of Illinois,
sitting by designation.

inhuman and degrading treatment. Marie Jeanne Jean alleges that Dorélien is responsible for the extrajudicial killing of Michel Pierre, Jean's husband and the father of her children, Vladimy and Michelda. Both Plaintiffs additionally claim Dorélien has attempted to fraudulently transfer his assets, including $3.2 million Dorélien won in the Florida State Lottery, to Lump Sum Capital, LLC ("LSC") to protect those assets from a judgment Plaintiffs have against Dorélien in Haiti.

In three separate orders, the district court granted Dorélien's motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b). On April 6, 2004 the district court dismissed Cajuste's claim for failure to file within the ten-year statute of limitations applicable to the ATCA and TVPA claims.[1] Jean v. Dorélien, No. 03-20161, slip op. at 2 (S.D. Fla. Apr. 6, 2004). On April 21, 2004 the district court dismissed Jean's claims for failure to exhaust her remedies in Haiti.[2] Jean v. Dorélien, No. 03-20161, slip op. at 4 (S.D. Fla. Apr. 21, 2004).[3]

---

[1]Although entering a final judgment against all of the Plaintiffs, the April 6, 2004 order did not address Jean's claims or the FUFTA claims. On April 9, 2004 the district court granted Plaintiffs' motion for reconsideration and issued a corrected judgment. The corrected judgment dismissed Cajuste as a party and reinstated Jean's ATCA, TVPA and FUFTA claims. Cajuste's FUFTA claim was, without discussion, not reinstated.

[2]In a footnote the district court dismissed LSC as a party because it was not served. Because the decision was issued prior to the return of service the district court was unaware that LSC had been served on March 31, 2004. Docket No. 82. LSC was reinstated as a defendant shortly thereafter.

[3]Following an appeal from the April 21, 2004 order, this Court *sua sponte* remanded because some causes of action had not been resolved. Jean v. Dorélien, No. 04-12069, slip op. at

3

On September 28, 2004 the district court dismissed the remaining claims on the grounds that the Plaintiffs did "not object[] to dismissal of Defendant Lump Sum as an innocent stakeholder whose further involvement is unnecessary to the prosecution." Jean v. Dorélien, No. 03-20161, slip op. at 3 (S.D. Fla. Sept. 28, 2004). Because the district court erred in each of these decisions, we reverse and remand.

**DISCUSSION**

We review dismissals pursuant to Rule 12(b) de novo, taking all the material allegations of the complaint as true and liberally construing the complaint in favor of the Plaintiffs. Roberts v. Fla. Power & Light Co., 146 F.3d 1305, 1307 (11th Cir. 1998). A court may dismiss a complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984). Applying this standard, we consider each of the district court's rulings in turn.

*A.*     *Dismissal of Cajuste's Claims pursuant to the Statute of Limitations*

Under the TVPA and the ATCA, Plaintiffs have ten years from the date the cause of action arose to bring suit for torture, extrajudicial killing and other torts committed in violation of the law of nations or a treaty of the United States.

1-2 (11th Cir. May 6, 2004).

4

Cabello v. Fernandez-Larios, 402 F.3d 1148, 1154-55 (11th Cir. 2005) (citation omitted); see also Papa v. United States, 281 F.3d 1004, 1012-13 (9th Cir. 2002) (holding ten-year statute of limitations applies to the TVPA and ATCA); Doe v. Islamic Salvation Front, 257 F. Supp. 2d 115, 119 (D.D.C. 2003) (same); Wiwa v. Royal Dutch Petroleum Co., No. 96 Civ. 8386, 2002 WL 319887, at *18-19 (S.D.N.Y. Feb. 28, 2002) (same). However, this statute of limitations is subject to the doctrine of equitable tolling. Cabello, 402 F.3d at 1154; see also Papa, 281 F.3d at 1012-13; Hilao v. Estate of Marcos, 103 F.3d 767, 773 (9th Cir. 1996).

The detention, beating and torture giving rise to Cajuste's claims occurred between April and June 1993. As the district court noted, Cajuste first filed his TVPA and ATCA claims on October 23, 2003, over ten years after the cause of action arose. Thus, the question before the district court was whether equitable tolling would permit Cajuste's claim. The district court ruled that it would not and dismissed Cajuste's complaint saying only that "equitable tolling should not be applied in this case." Jean, No. 03-20161, slip op. at 2 (S.D. Fla. Apr. 6, 2004). Because equitable tolling is clearly legally applicable to the claims, the question on appeal is whether "it appears beyond doubt that [Cajuste] can prove no set of facts in support of his claim" that the statute of limitations should be equitably tolled. Beck v. Deloitte & Touche, 144 F.3d 732, 735-36 (11th Cir. 1998).

5

Initially, we note that Cajuste has adequately stated a cause of action under the TVPA and ATCA. He alleges that because he was outspoken about the military regime which seized power during a 1991 coup, he was taken by police in April of 1993 to the police station and physically beaten with brass knuckles and fists on his back, abdomen, arms and face. As a result, he lost consciousness and remained in a cell without medical treatment, a toilet or room to move, and with little food or water for three days. After a United Nations official demanded Cajuste be removed from prison, he was moved to a military hospital, where he remained until approximately June 1, 1993.

Cajuste further alleges that from 1991 to 1994 the defendant Dorélien was a Colonel in the Haitian military and was Chief of Personnel or Assistant Chief of Staff in 1992, a position that made him responsible for military personnel, including the management, supervision, discipline and administration of military justice. As alleged in the second amended complaint, Dorélien remained in power, holding that position until September 1994, when the military regime was removed under threat from the United States. Dorélien, Cajuste claims, arrived in the United States sometime after he fled Haiti in September 1994.[4] Thus, Cajuste

[4]In 2003 this Court denied Dorélien's petition for review of his denial of an application for asylum. See Dorélien v. U.S. Atty. Gen., 317 F.3d 1314 (11th Cir. 2003). That decision noted the immigration judge's finding that Dorélien arrived in the United States in early 1995.

6

claims that because Dorélien was in power until 1994 as well as not physically present in the United States, the statute of limitations must be tolled until at least 1994. We agree.

"Equitable tolling is appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence." Sandvik v. United States, 177 F.3d 1269, 1271 (11th Cir. 1999) (citing Irwin v. Department of Veterans Affairs, 498 U.S. 89, 95-96 (1990)); Cabello, 402 F.3d at 1154-55; Calderon v. United States Dist. Ct., 163 F.3d 530, 541 (9th Cir. 1998).

First, pursuant to the TVPA, the statute of limitations must be tolled at least until Dorélien entered the United States and personal jurisdiction could be obtained over him. See S. Rep. No. 102-249, at 7 (stating that "only defendants over which a court in the United States has personal jurisdiction may be sued"). In considering the TVPA, the Senate Report stated:

> The statute of limitations should be tolled during the time the defendant was absent from the United States or from any jurisdiction in which the same or a similar action arising from the same facts may be maintained by the plaintiff, provided that the remedy in that jurisdiction is adequate and available.

S. Rep. No. 102-249, at 11 (1991); see also Hilao, 103 F.3d at 773 ("The Senate

_____

Dorélien, 317 F.3d at 1315.

Report on the TVPA states that the ten-year statute is subject to equitable tolling, including for periods in which the defendant is absent from the jurisdiction . . . .").

Second, Cajuste has alleged sufficient facts to equitably toll the statute of limitations until Dorélien was removed from power. Cajuste claims: i) the "military regime was characterized by widespread state sponsored human rights violations, including abuses committed by the Haitian Armed Forces," resulting in the death of thousands of Haitians; ii) that he and the union organizations he worked with were "targets of human rights abuses committed by the Haitian Armed Forces"; iii) that he was "well known throughout Haiti for his unionist activities" advocating against the military regime and that the military forces, under Dorélien's control would sack cities and attack civilians it believed were not supporting the military regime; iv) that during this time, he, his mother, daughter, two brothers and a sister were living in Haiti under the military regime; v) that this campaign of repression and the threat of retaliation continued throughout the period of military rule and the regime did not lose its grip over Haiti until September 1994; and vi) that it was not until October 1994 that the democratically elected government regained power.

We find these allegations sufficient to support a claim of equitable tolling. Congress acknowledged that plaintiffs face unique impediments such as reprisals

from death squads and immunity of high-ranking government officials in bringing human rights litigation. Litigation will often not be possible until there has been a regime change in the plaintiff's country of origin, after which the plaintiff can investigate and compile evidence without fear of reprisals against him, his family and witnesses. See also H. R. Rep. No. 102-367, pt. 1, at 3 (1991) ("The general collapse of democratic institutions characteristic of countries scourged by massive violations of fundamental rights rarely leaves the judiciary intact. The [TVPA] would respons[d] to this situation."); Collett v. Socialist Peoples' Libyan Arab Jamahiriya, 362 F. Supp. 2d 230, 242 (D.D.C. 2005) (relying on Senate Report's instruction mandating equitable tolling to conclude that "the statute of limitations for the plaintiffs' claims must be tolled to begin when the defendants were stripped of their immunity"). See generally Ellis v. Gen. Motors Acceptance Corp., 160 F.3d 703, 707 (11th Cir. 1998) (to decide whether and how equitable tolling applies to federal statutes of limitations, "courts examine the purposes and policies underlying the limitation provision, the Act itself, and the remedial scheme developed for the enforcement of the Act") (internal citation and quotation marks omitted).

We note that every court that has considered the question of whether a civil war and a repressive authoritarian regime constitute "extraordinary circumstances"

which toll the statutes of limitations of the ATCA and TVPA has answered in the affirmative. See, e.g., Hilao, 103 F.3d at 773 (tolling statute of limitations for claims of torture, "disappearance," and summary execution against former Philippine dictator Ferdinand Marcos until he left power and the country regained democratic rule); Doe v. Saravia, 348 F. Supp. 2d 1112, 1146-48 (E.D. Cal. 2004) (tolling statutes of limitations during and after El Salvadoran civil war due to fear of retaliation from military, government and death squads if plaintiffs brought litigation in United States); Doe v. Unocal Corp., 963 F. Supp. 880, 897 (C.D. Cal. 1997) (ATCA and TVPA claims "should be tolled" during Burmese dictatorship based on plaintiffs' alleged inability to "obtain access to judicial review" in Burma and the "threat of reprisal from [the government]" if plaintiffs attempted to access courts in the United States); Forti v. Suarez-Mason, 672 F. Supp. 1531, 1550 (N.D. Cal. 1987) (plaintiffs raised issue of fact that equitable tolling applied during Argentine military rule "given the pervasiveness of military's reign of terror").

Thus, the district court erred in finding that "equitable tolling should not be applied in this case." The pattern and practice of torture, mass murder, intimidation and reprisals against perceived opponents of the government during the military regime in Haiti from 1991 to 1994 as alleged in Cajuste's complaint

10

clearly qualify as extraordinary circumstances to toll the statute of limitations until Dorélien was removed from his position, the repressive security forces were dismantled and the democratically elected government resumed power. Because Cajuste filed his claims on October 23, 2003, he filed within ten years of the statute of limitations being tolled, and his claims as alleged are therefore, timely.

**B.     *Dismissal of Jean's Claim for Failure to Exhaust Remedies***

The district court dismissed Jean's complaint pursuant to the provision of the TVPA stating that, a "court shall decline to hear a claim if the claimant has not exhausted adequate and available remedies in the place in which the conduct giving rise to the claim occurred." 28 U.S.C. §1350(2)(b). We reverse the district court's determination for several reasons.

First, the exhaustion requirement does not apply to the ATCA. See Kadic v. Karadzic, 70 F.3d 232 (2d Cir. 1995); Abiola v. Abubakar, 267 F. Supp. 2d 907, 910 (N.D. Ill. 2003); Sarei v. Rio Tinto PLC, 221 F. Supp. 2d 1116, 1132-1135 (C.D. Cal. 2002); see also Jama v. I.N.S., 22 F. Supp. 2d 353, 364 (D.N.J. 1998) ("There is nothing in the ATCA which limits its application to situations where there is no relief available under domestic law."). Accordingly, the exhaustion requirement should not have been applied to Jean's ATCA claim against Dorélien.

Second, the exhaustion requirement pursuant to the TVPA is an affirmative

11

defense, requiring the defendant to bear the burden of proof.[5]  See Hilao, 103 F.3d

at 778, n.5; Estate of Rodriguez v. Drummond Co., 256 F. Supp. 2d 1250, 1267

(N.D. Ala. 2003) (citing Wiwa v. Royal Dutch Petroleum Co., 2002 WL 319887,

at *55-56 (S.D.N.Y. Feb. 28, 2002); SINALTRAINAL v. The Coca Cola Co.,

2003 WL 1846195 (S.D. Fla. Mar. 31, 2003)).  This burden of proof is substantial.

The Senate Report to the TVPA specifically stated:

> *[T]he committee recognizes that in most instances the initiation of  litigation under this legislation will be virtually prima facie evidence that the claimant has exhausted his or her remedies in the jurisdiction in which the torture occurred.  The committee believes that courts should approach cases brought under the proposed legislation with this assumption. . . .*
>
> More specifically, . . . [the exhaustion requirement] should be informed by general principles of international law.  The procedural practice of international human rights tribunals generally holds that the respondent has the burden of raising the nonexhaustion of remedies as an affirmative defense and must show that domestic remedies exist that the claimant did not use.  Once the defendant makes a showing of remedies abroad which have not been exhausted, the burden shifts to the plaintiff to rebut by showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.  The ultimate burden of proof and persuasion on the issue of exhaustion of remedies, however, lies with the defendant.

S.Rep. No. 102-249, at 9-10 (emphasis added); see Enahoro v. Abubakar, 408 F.3d

877, 892 (7th Cir. 2005) ("[T]o the extent that there is any doubt . . . both

___

[5]Dorélien first raised the exhaustion issue as an affirmative defense in his answer on March 14, 2003.

12

Congress and international tribunals have mandated that . . . doubts [concerning the TVPA and exhaustion are to] be resolved in favor of the plaintiffs."); Barrueto v. Larios, 291 F. Supp. 2d 1360, 1365 (S.D. Fla. 2003) (citing Mehinovic v. Vuckovic, 198 F. Supp. 2d 1322, 1347 n. 30 (N.D. Ga. 2002)); Wiwa, 2002 WL 319887, at *17 (holding that defendant raising TVPA exhaustion defense did not meet initial burden of demonstrating that plaintiffs had not exhausted "alternative and adequate" remedies in Nigeria); Cabiri v. Assasie-Gyimah, 921 F. Supp. 1189, 1197 n. 6 (S.D.N.Y. 1996) (noting that the legislative history of the TVPA indicates that the exhaustion requirement "was not intended to create a prohibitively stringent condition precedent to recovery under the statute"); Xuncax v. Gramajo, 886 F. Supp. 162, 178 (D. Mass 1995) (holding that "when foreign remedies are unobtainable, ineffective, inadequate, or obviously futile," exhaustion pursuant to TVPA is not required) (quoting S. Rep. No. 102-249 (1991)).

In finding that Jean had failed to exhaust her administrative remedies, the district court relied exclusively on an affidavit reflecting that Jean had obtained a legally binding judgement in Haiti against Dorélien. However, the district court failed to consider Jean's allegations and assertions that this judgment is ineffective and currently unenforceable in Haiti. Jean alleges that several years after the

13

removal of the military regime in late 1994, Haiti established a tribunal to try those responsible for atrocities during the military regime. In this tribunal, Dorélien was tried in absentia for the "Raboteau Massacre," in which the Haitian army and paramilitary groups attacked the civilian population in Raboteau, Haiti. During this attack, the military opened fire, as Jean's husband, Michel Pierre, and others tried to flee by boat. Michel Pierre and at least twenty-six unarmed civilians were killed and more than fifty homes were destroyed. In November 2000 a Haitian court found Dorélien liable for the Raboteau Massacre.

However, Jean claims that events have changed drastically since the November 2000 judgement against Dorélien. In 2004, a violent rebellion broke out, in which Dorélien was freed from prison[6] and returned to a position of power. Jean alleges that the house of the prosecutor who prosecuted Dorélien for the Raboteau massacre was burned and armed men attacked the Haitian judge who presided over the Raboteau Massacre trial. Jean also cited an Amnesty International report finding that former members of the military regime, including Dorélien, threaten the current rule of law in Haiti.

In his brief, Dorélien does not dispute that there was a recent violent

[6]The United States deported Dorélien to Haiti on January 27, 2003. See Dorélien, 317 F.3d 1314. Upon his arrival he was incarcerated.

14

rebellion, that Dorélien was freed during the rebellion or that Dorélien was returned to a position of power. Moreover, he does not dispute that those involved with prosecuting him for the Raboteau Massacre have been targets of violence, nor does he assert that the political structure is such that Jean could presently file her claims in Haiti and be successful. In short, Dorélien has not in any way met the requisite burden of proof to support an affirmative defense of nonexhaustion of remedies and the district court erred in failing to require him to do so. Moreover, the motion at issue was a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b), not a motion for summary judgement.[7] For these reasons, we reverse the district court's dismissal of Jean's complaint.

## C. *Dismissal of Florida State FUFTA Claims*

In the second amended complaint, Plaintiffs allege that in June 1997, while residing in Florida, Dorélien won $3.2 million in the lottery. Plaintiffs claim that after Dorélien was deported to Haiti and shortly after the commencement of this action in 2003, Dorélien entered into a Lottery Prize Assignment Agreement with LSC. Under the agreement LSC would pay Dorélien $1.3 million in exchange for the remaining 13 payments of $159,000 a year. Plaintiffs claim that Dorélien

---

[7]Although the disputed issues of material fact would have made summary judgement questionable as well.

15

stated in the Assignment Agreement that he had been a resident of Florida for at least twelve months prior to the execution of the agreement and that he was not subject to an outstanding judgment. The Plaintiffs claim that these assertions are false, as Dorélien was deported several months before the agreement was signed and Plaintiffs had a judgment against Dorélien in Haiti for his role in the Raboteau Massacre.

The district court dismissed Plaintiffs' FUFTA claims without discussion, ruling that LSC was an innocent stakeholder and that the Plaintiffs no longer wished to pursue their FUFTA claim. Jean v. Dorélien, No. 03-20161, slip op. at 5 (S.D. Fla. Sept. 28, 2004). The district court based this conclusion on its belief that Plaintiffs' had failed to comply with the July 26, 2004 court order requiring them to list the remaining issues in the case. Jean v. Dorélien, No. 03-20161, slip op. at 3 (S.D. Fla. Oct. 29, 2004). However, the record reflects that Plaintiffs' did timely comply with the court's order in this regard. Accordingly, Plaintiffs' FUFTA claims are reinstated.

## CONCLUSION

For the foregoing reasons, the April 6, 2004, April 21, 2004 and September 28, 2004 district court orders dismissing Plaintiffs' claims are hereby vacated and this cause remanded for further proceedings in accordance with this opinion.

16

**VACATED and REMANDED.**