**Bin WENG, Petitioner,**

v.

**U.S. ATTORNEY GENERAL, Immigration & Naturalization Service, Respondents.**

**No. 01–17214.**

United States Court of Appeals, Eleventh Circuit.

April 10, 2002.

---

4. We issued an injunction pending appeal. That injunction will be lifted when the man-

date issues in this case.

Ernesto H. Molina, Nelda C. Reyna, David V. Bernal, Dept. of Justice (OIL), Washington, DC, for Respondent.

Before TJOFLAT, CARNES and HULL, Circuit Judges.

BY THE COURT:

Petitioner Bin Weng has filed a petition for review of the BIA's final order of removal. He now moves this Court to stay his removal during our appellate review. Weng's motion for a stay is denied because he has not satisfied the new "clear and convincing" standard for enjoining an alien's removal under IIRIRA. *See* 8 U.S.C. § 1252(f)(2).

## I. BACKGROUND

Weng is a native and citizen of China. On April 17, 2001, he arrived at Hartsfield Atlanta International Airport without any travel or entry documents. He provided a statement to officers of Respondent Immigration and Naturalization Service ("INS") that he feared persecution if returned to China. On April 24, 2001, the INS began proceedings to remove Weng from the United States by issuing a Notice to Appear, which charged him with being inadmissable due to a lack of required travel and entry documents. *See* 8 U.S.C. § 1182(a)(7)(A)(i)(I).

At a hearing before an immigration judge ("IJ"), Weng admitted that he did not have the proper travel and entry documents. After reviewing Weng's statements at his hearing and his formal application for asylum and other relief, the IJ found Weng's claims lacked credibility, denied him asylum, withholding of removal and relief under the Convention Against Torture, and ordered him removed from the United States. On November 27, 2001, the Board of Immigration Appeals ("BIA") concluded that the administrative record supported the IJ's adverse credibility finding and dismissed Weng's appeal.

On December 27, 2001, Weng filed a petition for review with this Court, and moved for a stay of removal pending disposition of his appeal. In supplemental briefing, the INS asserts that Weng has failed to meet his burden for a stay under 8 U.S.C. § 1252(f)(2). We agree.

## II. DISCUSSION

### A. IIRIRA

This appeal requires us to interpret a portion of the changed landscape of immigration procedure after the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104–208, 110 Stat. 3009 (1996). Prior to IIRIRA, an alien ordered out of the United States generally received an automatic stay of deportation upon the service of his petition for review. *See* 8 U.S.C. § 1105a(a)(3) (1994). The issue of a stay pending our review would arise in only limited situations, such as when the alien was being deported because of an aggravated felony conviction. *Id.* In pre-IIRIRA cases, if aliens were deported, this stripped our jurisdiction to review their

petitions. *See* 8 U.S.C. § 1105a(c) (1994) ("An order of deportation ... shall not be reviewed by any court if the alien ... has departed from the United States after the issuance of the order.").

IIRIRA, as part of its dramatic alteration of immigration law, eliminated automatic stays. IIRIRA directs that "[s]ervice of the petition [for review of an order of removal] ... does *not* stay the removal of an alien pending the court's decision on the petition, unless the court orders otherwise." 8 U.S.C. § 1252(b)(3)(B) (emphasis supplied). Thus, even if a petition for review is filed, IIRIRA permits the INS to remove aliens immediately following a BIA decision, and allows aliens to continue their appeals from abroad. *See* 8 U.S.C. § 1252(b)(3)(B) (replacing 8 U.S.C. § 1105a(c)); *Moore v. Ashcroft*, 251 F.3d 919, 922 (11th Cir.2001) (finding case not to be moot following removal of an alien based on "[n]oticeabl[e] absen[ce]" in post-IIRIRA immigration law of "any similar language removing federal review jurisdiction in the event an alien departs or is removed"). IIRIRA's permanent rules govern Weng's motion because his removal proceedings began after IIRIRA's effective date of April 1, 1997.

**B. "Clear and convincing" standard**

■ Because a petition for review no longer stays removal, aliens such as Weng now have the burden of moving to stay their removal. IIRIRA also provides a more stringent standard for aliens to satisfy before federal courts may enjoin their final removal orders. Specifically, § 1252(f)(1) first directs that courts cannot enjoin at all the operation of certain sections of immigration law. Then § 1252(f)(2) provides they may enjoin an individual alien's final order of removal if the alien shows "by clear and convincing evidence that the entry or execution of such order is prohibited as a matter of law," as follows:

> Notwithstanding any other provision of law, no court shall enjoin the removal of any alien pursuant to a final order under this section unless the alien shows by clear and convincing evidence that the entry or execution of such order is prohibited as a matter of law.

8 U.S.C. § 1252(f)(2).[1]

For several reasons, we conclude that § 1252(f)(2)'s "clear and convincing" standard applies to Weng's motion for a stay of removal pending resolution of his petition for review.[2] First, the plain language of "enjoin[ing]" removal of an alien in

---

**1.** Section 1252(f)(1) "prohibits federal courts from granting classwide injunctive relief against the operation of [8 U.S.C.] §§ 1221–1231, but specifies that this ban does not extend to individual cases." *Reno v. American–Arab Anti–Discrimination Committee*, 525 U.S. 471, 481–82, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999). In contrast, § 1252(f)(2) is entitled "Particular cases" and governs the standard for injunctive relief in individual cases. 8 U.S.C. § 1252(f)(2).

**2.** Courts have disagreed about the applicability of § 1252(f)(2) to temporary stays of removal. *Compare Song v. INS*, 82 F.Supp.2d 1121, 1130 (C.D.Cal.2000) (finding § 1252(f)(2) prevents stays of removal in cases in which clear and convincing evidence of error as a matter of law is not shown);

*Maldonado v. Fasano*, 67 F.Supp.2d 1170, 1175 (S.D.Cal.1999) (same); *Hypolite v. Blackman*, 57 F.Supp.2d 128, 132 (M.D.Pa. 1999) (same); *Naidoo v. INS*, 39 F.Supp.2d 755, 762 (W.D.La.1999) (same); *Ozoanya v. Reno*, 979 F.Supp. 447, 451 (W.D.La.1997) (same) with *Andreiu v. Reno*, 223 F.3d 1111 (9th Cir.2000), *superseded by* 253 F.3d 477, 479–84 (9th Cir.2001) (en banc) (finding § 1252(f)(2) does not apply to motions to stay removal and thus injunctive relief standard continues to apply); *Bejjani v. INS*, 271 F.3d 670, 687–89 (6th Cir.2001) (same). In the Ninth Circuit case there was a concurring opinion asserting that § 1252(f)(2)'s "clear and convincing" standard does apply to motions for stays, but agreeing with the majority that the alien in that case had "wholly failed by any measure of evidence" to meet the

§ 1252(f)(2) encompasses the act of staying of removal. "Enjoin" is defined as "[t]o require; command; positively direct. To require a person, by writ of injunction, to perform, or to abstain or desist from, some act." Black's Law Dictionary 529 (6th ed.1990). And "stay" is defined as:

A stopping; the act of arresting a judicial proceeding by the order of a court. Also that which holds, restrains, or supports. A stay is a suspension of the case or some designated proceedings within it. *It is a kind of injunction* with which a court freezes its proceedings at a particular point. It can be used to stop the prosecution of the action altogether, or to hold up only some phase of it, such as an execution about to be levied on a judgment.

*Id.* at 1413 (emphasis supplied). Thus, their definitions and common usage show that the plain meaning of enjoin includes the grant of a stay.[3] Second, courts have regularly used these terms interchangeably or to indicate the act of enjoining includes the act of staying.[4]

Third, in the limited situations where stays were not automatic in pre-IIRIRA cases, courts would treat aliens' motions for stays of deportation as discretionary motions for injunctive relief. *See, for example, Jenkins v. INS,* 32 F.3d 11, 14–15 (2d Cir.1994) ("This court will treat an application for a discretionary stay as a request for injunctive relief."), *overturned on other grounds, Aguirre v. INS,* 79 F.3d 315 (2d Cir.1996); *Arthurs v. INS,* 959 F.2d 142, 143–44 (9th Cir.1992) (looking to whether "serious legal question" was presented when reviewing motion to stay) (citing *Artukovic v. Rison,* 784 F.2d 1354 (9th Cir.1986)); *Ignacio v. INS,* 955 F.2d 295, 299 & n. 5 (5th Cir.1992) (applying "the same four-factor balancing test" to both judicial stay of deportation of alien and request for injunctive relief); *Reid v. INS,* 766 F.2d 113, 116 n. 9 (3d Cir.1985) (recognizing "the possibility that in extraordinary cases relief in the nature of a stay might be available in the court of appeals pursuant to the All Writs Act"); *Zardui-Quintana v. Richard,* 768 F.2d 1213, 1215–16 & n. 7 (11th Cir.1985) (observing that request for a judicial stay of deportation in habeas case was akin to and should be treated as a request for injunctive relief).[5]

Congress is presumed to be knowledgeable of this established pattern of interpre-

---

burden for a stay. *Andreiu,* 253 F.3d at 485–90 (Beezer, J., concurring).

**3.** *See Harris v. Garner,* 216 F.3d 970, 976 (11th Cir.2000) (en banc) ("When the import of the words Congress has used is clear, as it is here, we need not resort to legislative history, and we certainly should not do so to undermine the plain meaning of the statutory language.") (citations omitted); *United States v. Weaver,* 275 F.3d 1320, 1331 (11th Cir. 2001) (finding that court should not look beyond "plain meaning of the statutory language" except when confronted with "absurdity of results") (citations omitted).

**4.** *See, for example, NLRB v. Nash–Finch Co.,* 404 U.S. 138, 139–41, 92 S.Ct. 373, 30 L.Ed.2d 328 (holding that board's attempt to "enjoin" or "restrain" state court injunction fell within exception of 28 U.S.C. § 2283, which forbids court from granting "an injunc-

tion to stay" such proceedings unless otherwise authorized); *Spivey v. Board of Pardons and Paroles,* 279 F.3d 1301, 1304 n. 3 (11th Cir.2002) (noting that relief sought in capital case was "a preliminary injunction, having the necessary effect of a stay of execution"); *Okongwu v. Reno,* 229 F.3d 1327, 1328–29 (11th Cir.2000) (noting that Court had granted alien's motion for "preliminary injunctive relief, construed as a motion for stay of deportation"); *Jove Engn'g, Inc. v. IRS,* 92 F.3d 1539, 1546 (11th Cir.1996) (referring to automatic stay in bankruptcy cases as "essentially a court-ordered injunction") (citation omitted); *see also* 28 U.S.C. § 2349(b) (referring to role of interlocutory injunction against agency decision as "continu[ing] the temporary stay or suspension").

**5.** In addition, in considering motions for stays and injunctive relief, courts historically have

tation treating motions to stay as requests for injunctive relief, and legislated with it as a backdrop when it crafted § 1252(f)(2). *See Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 184–85, 108 S.Ct. 1704, 100 L.Ed.2d 158 (1988). Thus, § 1252(f)(2)'s reference to the power to "enjoin" should be read as encompassing stays of removal as well. And the new "clear and convincing" standard for granting injunctive relief applies to stays.[6]

We reject the contention that because "enjoin and restrain" are used in § 1252(f)(1), therefore the use of only "enjoin" in § 1252(f)(2) is limited to permanent injunctive relief and cannot encompass temporary motions for stays. The basis of this contention is that "enjoin" in § 1252(f)(2) must have this limited meaning or otherwise "restrain" in § 1252(f)(1) is mere surplusage. This contention—that "enjoin" in § 1252(f)(1) is limited to only permanent injunctive relief—is contrary to the plain meaning of "enjoin." Moreover, there is no reference to permanent or tem-

porary relief in the language of § 1252(f)(1). This contention also ignores what is an important distinction between § 1252(f)(1) and § 1252(f)(2). Section 1252(f)(1) prohibits the use of injunctive relief against entire provisions of immigration law,[7] whereas § 1252(f)(2) relates solely to enjoining "the removal of any alien." The use of the word "restrain" would be inappropriate as to removal because injunctive relief grants the very affirmative relief sought by aliens instead of merely preserving the status quo. *See Zardui–Quintana,* 768 F.2d at 1215 n. 7 (Tjoflat, J.) (citing *Fernandez–Roque v. Smith,* 671 F.2d 426, 429–31 (11th Cir.1982)). As discussed previously, Congress chose the broad word "enjoin" in § 1252(f)(2) against a specific and consistent backdrop of case law—both generally and in immigration law—interpreting stays as injunctive relief and did not exclude them or include any limiting language in § 1252(f)(2).[8]

Nor do we believe that § 1252(f)(2) only applies to requests for collateral injunctive

applied the same substantive standards, i.e. balancing the four familiar considerations of the likelihood of success on the merits, risk of irreparable harm without relief, risk of injury to the party opposing the relief and the public interest. *See, for example, Coleman v. PAC-CAR, Inc.,* 424 U.S. 1301, 1305, 96 S.Ct. 845, 47 L.Ed.2d 67 (1976) ("A court in staying the action of ... an administrative agency must take into account factors such as irreparable harm and probability of success on the merits.") (citations omitted). These are the same standards courts have used when evaluating motions for stays pending an appeal. *See, for example, In re Federal Grand Jury Proceedings (FGJ 91–9),* 975 F.2d 1488, 1492 (11th Cir. 1992); *see also* Fed. R.App. P. 8(a)(2) (governing procedure for "Stay or Injunction Pending Appeal" to circuit court); Fed. R.App. P. 18 (applying identical procedure to "stay pending review" of agency decision by circuit court).

6. IIRIRA's transitional rules also provide that "service of the petition for review shall *not* stay the deportation of an alien pending the

court's decision on the petition, unless the court orders otherwise." IIRIRA § 309(c)(4)(F), 8 U.S.C. § 1101 note (emphasis supplied). But they do not include language similar to § 1252(f)(2). Thus, in transitional rule cases, courts have continued to use the pre-IIRIRA injunctive relief standard for aliens' motions for stays of their removal orders. *See, for example, Sofinet v. INS,* 188 F.3d 703, 706 (7th Cir.1999) (applying injunctive relief standard, which it called "the general criteria developed for stays or injunctions pending appeal," in transitional rule case); *Abbassi v. INS,* 143 F.3d 513, 514 (9th Cir. 1998) (applying "same standards employed by district courts in evaluating motions for preliminary injunctive relief" to merits of motion to stay).

7. *See* footnote 1, *supra.*

8. Nor are we persuaded that the use of the word "stay" in § 1252(b)(3)(B)—but not in § 1252(f)(2)—means Congress did not intend for stays to be governed by § 1252(f)(2). The word "stay" in § 1252(b)(3)(B) simply echoes

relief. Its words speak of no such limitation.[9] In addition, § 1252(f)(2)'s raising of the bar for temporary stays fits into IIRIRA's new landscape. Petitions for review no longer automatically stay removal. Instead only aliens who can show clear-cut errors under established law will receive stays, and those who cannot must either (1) rely on INS' post-IIRIRA discretion not to execute removal orders until judicial review is complete, or (2) if the INS executes the removal order, continue to challenge removal orders after their departure.[10]

## C. Application to Weng

■ Applying § 1252(f)(2)'s standard,[11] we conclude that Weng has failed to provide clear and convincing evidence that his removal order is prohibited as a matter of law. He argues primarily that the BIA erred in rejecting his asylum application based on its finding of inconsistencies in his version of events. Weng first explains that he offered contradictory testimony about a key event that led to his exit from China because he was only 17 years old at the time of the event. And he asserts that he could not explain why his Chinese government ID card he offered as evidence at his hearing was dated after he left China only because he did not have time to authenticate it.

We do not find either of these credibility arguments sufficient to warrant a stay of deportation. Thus, we deny Weng's mo-

---

the terminology used in the pre-IIRIRA statute concerning automatic stays which this section overturns, and it would not be appropriate to refer to "automatic injunctions" in this context because the word "enjoin" refers to a broad category of judicially prescribed relief.

**9.** In addition, although Weng does not make such an argument, we should point out that § 1252(a)(1) provides that "[j]udicial review of a final order of removal ... is governed only by chapter 158 of Title 28 [the Hobbs Act], except as provided in subsection (b) of this section and except that the court may not order the taking of additional evidence under section 2347(c) of Title 28." 8 U.S.C. § 1252(a)(1). Thus, an argument can be made that judicial review of motions for stays is informed in part by the Hobbs Act procedures. We conclude, however, that § 1252(f)(2)'s introductory phrase of "[n]otwithstanding any other provision of law" forecloses such an argument as to the standard for injunctive relief in individual aliens' cases. *Id.* § 1252(f)(2).

**10.** We note that the "clear and convincing" standard comports with the central mission of IIRIRA. *See American–Arab*, 525 U.S. at 486, 119 S.Ct. 936 ("*[M]any* provisions of IIRIRA are aimed at protecting the Executive's discretion from the courts—indeed, that can fair-

ly be said to be the theme of the legislation.") (emphasis in original); S.Rep. No. 104–249 at 7 (1996) ("Aliens who violate U.S. immigration law should be removed from this country as soon as possible. Exceptions should be provided only in extraordinary cases specified in the statute and approved by the Attorney General.").

**11.** The burdens established by § 1252(f)(2) are not new to this Court. "The Supreme Court has described 'clear and convincing evidence' as an 'intermediate standard' of proof: the 'clear and convincing' standard lies somewhere between 'proof by a preponderance of the evidence' and 'proof beyond a reasonable doubt.'" *United States v. Owens*, 854 F.2d 432, 436, n. 8 (11th Cir.1988) (quoting and citing *Addington v. Texas*, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979)). And evaluating whether a party is entitled to a decision as a "matter of law" represents a large portion of our docket. *See, for example, Davis v. Town of Lake Park*, 245 F.3d 1232, 1237 (11th Cir.2001) (referring to *de novo* review of denial of motion for judgment as a matter of law as involving "familiar standards"). *See also Levan v. Capital Cities/ABC, Inc.*, 190 F.3d 1230, 1244 (11th Cir.1999) (finding in defamation case that plaintiff did not show "the existence of actual malice by clear and convincing evidence" and thus finding "as a matter of law" for defendant).

tion for stay pending his removal. This decision, of course, does not decide the merits of Weng's case, and nothing we state prejudices his ability to advance any of the claims asserted in his petition for review.

DENIED.