**CHENG KE CHEN, Petitioner,**

v.

**Eric HOLDER, et al., Respondents.**

**No. 4:11–cv–0099–RRA.**

United States District Court,
N.D. Alabama,
Middle Division.

March 21, 2011.

---

Chunyu Jean Wang, Wang Law Office PLLC, Flushing, NY, for Petitioner.

Carolyn Williams Steverson, U.S. Attorney's Office, Birmingham, AL, Hans H. Chen, U.S. Department of Justice, Washington, DC, for Respondents.

## MEMORANDUM OPINION

SHARON LOVELACE BLACKBURN, Chief Judge.

This is a habeas corpus petition brought pursuant to 28 U.S.C. § 2241. The magistrate judge entered a report and recommendation recommending that the petitioner's motion for preliminary injunctive relief be denied; that the petitioner's request for costs, attorneys' fees, and expenses under the Equal Access to Justice Act be denied; that the respondents' motion to dismiss be granted; and that the petition be dismissed. Objections have been filed.

The court has considered the entire file in this action, including the report and recommendation, and has reached an independent conclusion that the report and recommendation is due to be adopted and approved.

Accordingly, the court hereby adopts and approves the findings and recommendation of the magistrate judge as the findings and conclusions of the court. The petitioner's motion for preliminary injunctive relief is due to be denied; the petitioner's request for costs, attorneys' fees, and expenses under the Equal Access to Justice Act is due to be denied; the respondents' motion to dismiss is due to be granted; and the petition is due to be dismissed. An appropriate order will be entered.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

ROBERT R. ARMSTRONG, Jr., United States Magistrate Judge.

This is a petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2241. The petitioner, Cheng Ke Chen, a native and citizen of China, is incarcerated at the Etowah County Jail, in the custody of the Bureau of Immigration and Customs Enforcement (ICE), pending his removal to China. In his petition, Chen claims that he has been illegally detained by ICE since his arrest on December 7, 2010. Chen seeks to be released from custody pending his removal to China, "because his removal is not reasonably foreseeable." *Petition*, Court Document 1 at 19–20.

Chen has also filed a motion for preliminary injunctive relief, requesting that the court enjoin the respondents from "removing [the p]etitioner pending the outcome of the instant action and from preventing [p]etitioner's release from physical custody; declaring that the actions of [the r]espondents were or are in violation of [the p]etitioner's constitutional rights; and awarding such other and further relief as the [c]ourt deems just and proper." *Notice of Motion*, Court Document 5 at 2.

In response to the court's orders, the respondents have filed a response to the motion for preliminary injunctive relief, and a motion to dismiss the petition in which they argue that the petition is due to be dismissed because Chen is being properly detained pending deportation. The petitioner, in turn, has filed a response in support of his motion for preliminary in-

**1186**

junctive relief, an opposition to the respondents' motion to dismiss the petition, and a supplemental reply to the respondents' motion to dismiss.

■ The issuance of a temporary restraining order or preliminary injunctive relief is an extraordinary remedy to be granted only under exceptional circumstances. *Sampson v. Murray,* 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974). Motions requesting such relief must be evaluated under strict standards. *Martinez v. Mathews,* 544 F.2d 1233 (5th Cir. 1976). Those standards are set forth in *Parker v. State Board of Pardons and Paroles,* 275 F.3d 1032, 1034–35 (11th Cir. 2001):

> A TRO [temporary restraining order] or preliminary injunction is appropriate where the movant demonstrates that:
>
> (a) there is a substantial likelihood that he ultimately will prevail on the merits;
>
> (b) the TRO or preliminary injunction is necessary to prevent irreparable injury;
>
> (c) the threatened injury outweighs the harm that the TRO or Preliminary injunction would cause to the non-movant; and
>
> (d) the TRO or preliminary injunction would not be averse to the public interest.

■ "Because a [TRO or] preliminary injunction is 'an extraordinary and drastic remedy, its grant is the exception rather than the rule, and [the petitioner] must clearly carry the burden of persuasion.'" *United States v. Lambert,* 695 F.2d 536, 539 (11th Cir.1983) (*quoting Texas v. Seatrain International,* 518 F.2d 175, 179 (5th Cir.1975)).

■ Chen first asks the court to enjoin the respondents from "removing [the p]eti-tioner pending the outcome of the instant action."

By statute, a petition for review of an order of removal and a request for stay of removal must be filed "with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings." 8 U.S.C. § 1252(b)(2). Accordingly, petitioner's requests for a stay of removal and for a temporary restraining order against the respondents to prevent his removal are requests that need be made to the appropriate court of appeals, in this instance the Eleventh Circuit Court of Appeals, *Dorelien v. U.S. Attorney General,* 317 F.3d 1314, 1317 & 1319 (11th Cir.2003) ("As outlined in *Weng v. U.S. Attorney General* [287 F.3d 1335 (11th Cir.2002) ], this Court correctly concluded that 'the plain language of "enjoin[ing]" removal of an alien ... encompasses the act of staying of removal.' ... '[N]o court shall enjoin ... removal' encompasses Dorelien's motion because stay relief is quintessential injunctive relief."); *see also Obale v. Attorney General of the United States,* 453 F.3d 151, 161 (3rd Cir.2006) ("We apply the standard for granting a preliminary injunction when examining a petition for a stay of removal."), and that court will be able to exercise its jurisdiction to grant such relief provided Wilfort satisfies the statutory requirements for such relief, *Ngarurih v. Ashcroft,* 371 F.3d 182, 194 (4th Cir. 2004) ("It is not enough to say that we have jurisdiction over the order of removal. That fact gives us only the prerogative to apply equitable remedies to that order. Thus, we are free to grant a stay of removal when the alien satisfies the statutory requirements for such relief. *See* 8 U.S.C. § 1252(f)(2)."). *Wilfort v. Gonzales,* No. 07–0350–CG–C, 2007 WL 2220461 at *2 (S.D.Ala. July 27, 2007).

■  Clearly, this court lacks the authority to enjoin Chen's removal from the country. Thus, to the extent he seeks to have this court issue an order enjoining the respondents from removing him during the pendency of this action, the motion is due to be denied.

Chen further seeks to have the court enjoin the respondents from preventing his release from physical custody. As discussed below, Chen's detention is authorized pursuant to *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001). Therefore, he cannot prevail on the merits of his petition and his motion for temporary injunctive relief is due to be denied.

Chen illegally entered the United States at or near El Paso, Texas on July 19, 2001. On July 22, 2001, he was served with a Notice to Appear, charging him with being an inadmissible alien, subject to removal pursuant to § 212(a)(6)(A)(i) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1182(a)(6)(A)(i). *Notice to Appear*, Court Document 10–3.

On August 31, 2001, Chen was released on a $40,000 immigration bond pending his removal hearing. On the bond, Chen indicated that he would be residing at 31–14 137th Street, Flushing, New York, 11354. *Immigration Bond*, Court Document 10–4.

On March 20, 2002, Chen filed an application for relief from removal with the Immigration Court. *Affidavit of Deportation Officer Ronald M. Hunter, Jr.*, Court Document 10–2 at 2. Again, Chen listed his address as 31–14 137th Street, Flushing, New York, 11354. *Id.*

On October 3, 2002, ICE issued a Notice to Deliver Alien to Capital Bonding Corporation, the company that posted Chen's bond. *Notice to Deliver Alien*, Court Document 10–7. The bonding company was advised to have Chen present at a hearing on March 27, 2003. *Id.* Chen appeared at the hearing as ordered, and the immigration judge denied Chen's application for relief from removal, ordering that he be removed from the United States as an inadmissible alien. *Affidavit of Deportation Officer Ronald M. Hunter, Jr.*, Court Document 10–2 at 2–3.

On April 23, 2003, Chen filed a notice of appeal of the immigration judge's order with the Board of Immigration Appeals (BIA). Once again, Chen listed his address as 31–14 137th Street, Flushing, New York, 11354. *Id.*

On November 1, 2004, the BIA issued a summary affirmance of the immigration judge's order, finalizing Chen's removal order. *Id.* at 3. The BIA's decision was mailed to the petitioner at the Flushing, New York address, and was not returned to the board as undeliverable. *January 6, 2011 Decision of the Board of Immigration Appeals*, Court Document 10–10 at 4. On February 25, 2005, ICE issued a deportation warrant for Chen, based upon the final order or removal by the BIA, pursuant to § 212(a)(6)(A)(i) of the INA. *Warrant of Removal/Deportation*, Court Document 10–5. The warrant was never executed. *Id.* at 2.

On July 13, 2007, in an attempt to locate Chen to execute the final order of removal pending against him, ICE again issued a Notice to Deliver Alien to the bonding company that posted Chen's bond. *Notice to Deliver Alien*, Court Document 10–6. The bonding company was ordered to produce Chen at the nearest ICE office by August 7, 2007. *Id.* However, Chen failed to appear by August 7, 2007, as ordered, and never reported to ICE after the final order of removal was issued. *Affidavit of Officer Hunter*, Court Document 10–2 at 3. On November 15, 2007, ICE issued a notice that Chen's immigration bond had been breached on October 30, 2007, and

that the $40,000 had been forfeited. *Notice of Breach of Immigration Bond,* Court Document 10–8.

On December 18, 2007, ICE prepared a Fugitive Report for Chen, based upon his outstanding deportation warrant and failure to report to ICE by August 7, 2007, as ordered. *Fugitive Report,* Court Document 10–9.[1] The report listed Flushing, New York, as Chen's last known address. *Id.*

On December 7, 2010, ICE agents executed a federal criminal arrest warrant at 1328 Ileagnes Road in Raleigh, North Carolina, relating to the distribution of counterfeit merchandise. *Affidavit of Deportation Officer Ronald M. Hunter, Jr.,* Court Document 10–2 at 4. Although Chen was not named in the related criminal complaint itself, he was taken into custody by ICE agents after being found hiding under a bed. *Id.* Chen was transported to the Raleigh, North Carolina ICE office for arrest processing, where it was discovered that Chen had been ordered removed on March 27, 2003. *Id.*

On December 14, 2010, Chen filed a motion to reopen his removal proceedings and a motion for a stay of removal with the BIA. *January 6, 2011 Decision of the Board of Immigration Appeals,* Court Document 10–10 at 1. The BIA denied both the motion to reopen his removal proceedings and his motion for a stay of removal. *Id.* at 2.

On January 28, 2011, ICE mailed a formal travel document request to the Chinese Consulate. *Affidavit of Deportation Officer Ronald M. Hunter, Jr.,* Court Document 10–2 at 4. ICE anticipates that the Chinese Consulate will issue a travel document for Chen in the reasonably foreseeable future. *Id.* Officer Hunter states that

based upon his experience in obtaining travel documents for Chinese nationals, the Chinese Consulate typically issues travel documents for the repatriation of Chinese citizens within six to eight months from receipt of the request. *Id.* at 4–5.

Chen filed the current petition on January 12, 2011. In support of his petition, Chen alleges that:

1. his arrest was "patently unreasonable and in violation of [his] rights under the Fourth Amendment," *Petition,* Court Document 1 at 13;

2. he is being detained in violation of his Fifth Amendment due process rights because his detention "was not ordered in any criminal proceeding with adequate procedural safeguards," and because of the manner in which ICE found Chan and took him into custody before learning that he had been ordered deported, *Id.* at 14–15;

3. he was arrested in violation of his equal protection rights because his "arrest could only have been improperly based upon his race or ethnicity," *Id.* at 16; and

4. his detention is unlawful because the removal period has expired, *Id.* at 17–21.

As relief, Chen seeks to be released on bond pending his removal from the country.

■  Chen's first three claims concern constitutional violations that allegedly occurred in connection with his December 7, 2010 arrest and subsequent detention. He maintains that the alleged constitutional violations "are relevant to his detention and warrant habeas relief." *Petitioner's Traverse,* Court Document 15 at 2.

In support of this assertion, Chen cites *Argueta v. U.S. Immigration and Cus-*

---

1.  ICE prepares fugitive reports when seeking to execute final orders of removal against aliens who have absconded and whose whereabouts are unknown to the government.

*toms Enforcement,* Civil Action No. 08–1652(PGS), 2009 WL 1307236 (D.N.J. May 7, 2009); *Sissoko v. Rocha,* 440 F.3d 1145 (9th Cir.2006), *vacated in part,* 509 F.3d 947 (9th Cir.2007); and *Diaz–Bernal v. Myers,* 758 F.Supp.2d 106 (D.Conn.2010). However, none of these cases was brought pursuant to 28 U.S.C. § 2241 and in each of the cases, the plaintiffs sought money damages, not release from custody.

Chen points out that in *Sissoko v. Rocha,* 509 F.3d at 949, the court "concluded that [the] plaintiff's *Bivens* claim was barred by 8 U.S.C. § 1252(g), but observed that 'a habeas petition under 8 U.S.C. § 1252(e)(2) could have been successful in remedying his allegedly false arrest.'" *Id.* at 3. He uses this statement to support his position that the constitutional issues raised in his petition "are not only relevant to his petition for release, but are also properly raised in [his] habeas petition." *Id.* at 4. This argument is frivolous.

First, Chen does not seek habeas relief pursuant to § 1252(e)(2). Further, relief under § 1252(e)(2) is not available to Chen since that section applies only to expedited removal proceedings. Finally, even if the section could be applied to Chen, the limited review provided by the statute does not include review of constitutional violations allegedly committed during an arrest.[2]

The cases cited by the petitioner do not lend any credence to his argument that the constitutional violations alleged to have occurred when he was taken into custody entitle him to be released from detention pending his removal from the country. While Chen could seek money damages in a separate action for the constitutional violations he allegedly suffered when he was taken into custody, there is simply nothing to suggest that he is entitled to be released from custody due to the alleged violations. The petitioner's argument that the alleged constitutional violations entitle him to habeas relief in this case are clearly without merit and are due to be dismissed.

█ The petitioner's final claim is that he is being detained unlawfully. The petitioner's detention pending removal from the United States is governed by section 241(a) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1231(a). That section provides that the Attorney General is afforded a 90–day period to accomplish the alien's removal from the United States following the entry of a final order of deportation or removal, or, if the alien is confined, the date the alien is released from confinement. *See* 8 U.S.C. § 1231(a)(1)(A)-(B).[3] During the 90–day

**2.** Title 8 U.S.C. § 1252(e) provides:

(2) Habeas corpus proceedings
Judicial review of any determination made under section 1225(b)(1) of this title is available in habeas corpus proceedings, but shall be limited to determinations of—
(A) whether the petitioner is an alien,
(B) whether the petitioner was ordered removed under such section, and
(C) whether the petitioner can prove by a preponderance of the evidence that the petitioner is an alien lawfully admitted for permanent residence, has been admitted as a refugee under section 1157 of this title, or has been granted asylum under section 1158 of this title, such status not having been terminated, and is

entitled to such further inquiry as prescribed by the Attorney General pursuant to section 1225(b)(1)(C) of this title.

**3.** Section 1231(a)(1)(B) provides:

The removal period begins on the latest of the following:
(i) The date the order of removal becomes administratively final;
(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order; or
(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

period, Congress has mandated the detention of an alien who has been ordered removed. *See* 8 U.S.C. § 1231(a)(2).

The Attorney General may continue to detain an alien after the expiration of the 90–day removal period. *See* 8 U.S.C. § 1231(a)(6). In *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001), the United States Supreme Court held that section 241(a) of the INA authorizes **detention**, after entry of an administratively final order of deportation or removal, for a period "reasonably necessary" to accomplish the alien's removal from the United States. *Zadvydas*, 533 U.S. at 699–700, 121 S.Ct. 2491. The Court recognized six months as a presumptively reasonable period of time to allow the government to accomplish an alien's removal after the removal period has commenced. *Id.* at 701, 121 S.Ct. 2491.

> After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likeli-

hood of removal in the reasonably foreseeable future.

*Id.* As long as removal is reasonably foreseeable, the alien's potential dangerousness or risk of his committing further crimes may be considered in determining whether to retain custody. *Zadvydas*, 533 U.S. at 700, 121 S.Ct. 2491.

The petitioner asserts that the 90–day removal period began on November 1, 2004, when his removal order became administratively final, and that it expired 90 days later. *Memorandum of Law in Support of Motion for Preliminary Injunctive Relief*, Court Document 5–1 at 11. The petitioner further argues that " 'any presumptively reasonable six-month extended detention to which [the Respondents] may have been entitled' under *Zadvydas* expired long ago, as Mr. Chen's removal period began on November 1, 2004 when his removal order became administratively final." *Petitioner's Reply to Respondents' Response*, Court Document 13 at 7–8. The petitioner cites *Farez–Espinoza v. Chertoff*, 600 F.Supp.2d 488, 499 (S.D.N.Y.2009) in support of this argument.

In *Farez–Espinoza*, the petitioner was apprehended and detained by ICE fifteen months after the immigration court entered the order of removal. *Id.* at 498–99. In challenging her detention, the petitioner argued that prior to being taken into custody, she had no knowledge that an order of removal had been entered. *Id.* at 491, 502. The court held that the removal order became final the date it was issued, not when she was taken into custody fifteen months later. *Id.* at 499.[4]

8 U.S.C. § 1231(a)(1)(B).

**4.** The court reasoned that the petitioner's "address and whereabouts" were on file with DHS during the entire fifteen-month period, and that the respondents should not be permitted to benefit from their failure to "pursue removal ... until more than 15 months after her order of removal was entered." *Id.* at

500. The court rejected the respondents' contention that the removal period was extended until the date petitioner was detained, because the petitioner had committed no "affirmative misleading act that prevented her return, nor did she refuse to cooperate with the removal order" prior to her apprehension. *Id.* at 502.

Under the removal statute, the removal period begins when an order of removal becomes administratively final. 8 U.S.C. § 1231(a)(1)(B). A removal order entered in the absence of the alien to whom it refers, such as the removal order at issue in this case, becomes administratively final immediately upon its issuance. 8 C.F.R. § 1241.1(e). Therefore, under the clear language of the statute, Farez–Espinoza's 90–day removal period began to run on July 19, 2007, the date on which the Immigration Court entered the Order of Removal in her absence, and expired in October 2007.[5]

5. The *Farez–Espinoza* court relied on *Ulysse v. Department of Homeland Security*, 291 F.Supp.2d 1318 (M.D.Fla.2003), in rejecting the government's argument that the removal period did not begin until the petitioner was taken into custody.

In [*Ulysse*], a final order of removal of the petitioner was entered on April 14, 2002, but Petitioner received no notice of that order from her attorney. *Id.* at%1B 1321. Petitioner was not placed into custody until July 10, 2003. *Id.* Petitioner had remained at the same address, which had been on file with DHS, from 1999 until June 3, 2003. *Id.* at 1321 n. 6. Respondents argued that under their interpretation of the removal statute, which they claimed was entitled to deference as the determination of an administrative agency, the 90–day removal period did not begin until the petitioner was taken into custody. The court noted that the Respondents cited no case law directly on point for this interpretation; similarly, the Government here has presented no authority directly on point. The court went on to review the Respondents' interpretation under the *Chevron* doctrine, which requires the court first to determine whether "Congress has directly spoken to the precise question at issue." *Ulysse*, 291 F.Supp.2d at 1325 (*quoting Chevron U.S.A., Inc. v. Natural Resources Def. Council*, 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). Where the intent of Congress is clear, "the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* (*citing Chevron*, 467 U.S. at 843, 104 S.Ct. 2778). With respect to the issue before it, the Florida court then determined that Congress had spoken to the issue directly in the removal statute and intended for inadmissible, excludable or removable aliens to be deported within 90 days, if possible. *Id.* "This is evidenced not only by the clear language of the statute, but also by the change in the statutory language in 1996 ... reduc[ing] the amount of time that the Attorney General has to deport an alien from six months to 90 days...." *Id.* (*citing Kai v. I.N.S.*, 97 Civ. 0869(DC), 1997 WL 786946, at *2 (S.D.N.Y. Dec. 22, 1997)). The *Ulysse* court noted, correctly it seems, that under the Respondents' interpretation of the removal statutes,

Respondents could arbitrarily trigger commencement of the removal period by simply waiting to take an alien into custody. This interpretation, however, flies in the face of the plain reading of the statute and Congress' intent that removal of the alien, or at least a bona fide attempt to remove the alien, should be done within 90 days of the removal order being final ... If Respondents are allowed the liberty to decide when they will comply or even attempt compliance with the statutes that they are charged with enforcing, the statutory scheme will be rendered a nullity and Congress' intent to remove illegal aliens as quickly possible will be thwarted. Federal agencies should not and do not have such power.

*Id.* at 1325–26. Because the court found that the Government had provided no justification for its almost 17–month delay in detaining the petitioner and removing her from the United States, in contravention of the statute, and because there was no reason to suspend the removal period pursuant to 8 U.S.C. § 1231(a)(1)(C), the court held that the Respondents were without statutory authority to detain the petitioner and granted her habeas petition. *Id.* at 1326.

Farez–Espinoza's case arises under circumstances virtually identical to those in *Ulysse*. Farez–Espinoza was ordered removed two and a half years ago, when the Immigration Court entered an order in her absence. She received no notice of that removal order until October 2008, when she was taken into custody by ICE. At all times since her arrival in this country, Fa-

*Farez–Espinoza,* 600 F.Supp.2d at 499. The court then jumped to the conclusion that *Zadvydas'* presumptively reasonable six-month extended detention period also began running on the date the removal order was final, regardless of the fact that the petitioner was not in custody during that time:

> Likewise, any presumptively reasonable six-month extended detention to which the Government may have been entitled expired in January 2008. *See Peynado v. Bureau of Immigration & Custom Enforcement,* No. 1:08–CV–2107, 2009 WL 136749, at *3, 2009 U.S. Dist. LEXIS 3538, at *6 (M.D.Pa. Jan. 20 2009) ("[T]he presumptively reasonable six month period began running on June 27, 2008, the date the removal order became administratively final."); *Jackson v. Chertoff,* No. 08–1575(SDW), 2008 WL 2557516, at *3, 2008 U.S. Dist. LEXIS 48035, at *10–11 (D.N.J. June 23, 2008); *Lamas v. McKenzie,* No. 07–6035(SDW), 2008 WL 346138, at *8, 2008 U.S. Dist. LEXIS 8647, at *32 (D.N.J. Feb. 6, 2008) ("Petitioner's 90–day removal period (as well as his six-month presumptive period under *Zadvydas*) began to run on that very same day."); *Diallo v. Pereira,* No. AW–07–348, 2007 WL 5230798, at *3, 2007 U.S. Dist. LEXIS 96020, at *9 (D.Md. June 29, 2007).

*Id.* In each of the cases cited by the *Farez–Espinoza* court, the petitioner was in custody during the 90–day removal period;

therefore, it made sense that *Zadvydas'* presumptively reasonable six-month *extended detention period* also began to run on the date the 90–day removal period began.

However, in Chen's case, he was not in custody during the 90–day removal period. The issue in *Zadvydas* was whether the Attorney General has authority "to detain a removable alien indefinitely beyond the removal period or only for a period reasonably necessary to secure the alien's removal." 533 U.S. at 682, 121 S.Ct. 2491. The Supreme Court held that section 241(a) of the INA authorizes *detention,* after entry of an administratively final order of deportation or removal, for a period "reasonably necessary" to accomplish the alien's removal from the United States. *Id.* at 699–700, 121 S.Ct. 2491. The Court the recognized *detention* for six-months as the presumptively reasonable period of time to allow the government to accomplish an alien's removal after the removal period has commenced. *Id.* at 701, 121 S.Ct. 2491. Because *Zadvydas* clearly involved *detention* of a petitioner during the presumptively reasonable period, it defies common sense to suggest that *Zadvydas* time can run while a petitioner is not in custody.[6] Therefore, it is clear that *Zadvydas* authorizes the respondents to detain the petitioner for up to six months while they attempt to remove him from the country.

---

rez–Espinoza's address and whereabouts have been on file with DHS and the Government has shown no reason why it did not pursue removal of Farez–Espinoza until more than 15 months after her order of removal was entered. Therefore, I cannot accept the Government's contention that it could arbitrarily trigger the removal period by its unilateral action of choosing not to pursue Farez–Espinoza's removal for more than a year. Rather, I find that the removal period, as well as any presumptively rea-

sonably [sic] six-month period of removal to which the Government may have been entitled began to run on July 19, 2007 and expired in October 2007 and January 2008 respectively.

600 F.Supp.2d at 499–500 (footnote omitted).

**6.** Also, there is an impracticality to such a ruling that leaves much unanswered, such as whether, once released under these circumstances, an alien could ever be placed in custody again, even for a short period of time, prior to deportation.

Regardless of when Chen's removal period expired, it is undisputed that he was not taken into custody until December 7, 2010. Thus, pursuant to *Zadvydas,* ICE is authorized to ***detain*** Chen for six months while it seeks to carry out the removal order. Because, to date, Chen has been in custody only ninety-nine days, his confinement is legal and he is not entitled to be released from custody. Thus, his claim that he is being detained illegally is without merit and it is due to be dismissed.

Finally, Chen "seeks an award of his costs, attorneys' fees, and expenses, under the Equal Access to Justice Act." *Petition,* Court Document 1 at 10. However, Chen is not entitled to recovery of fees and costs under the Equal Access to Justice Act, because he is not a prevailing party. 28 U.S.C. § 2412(d)(1)(A). Therefore, his request is due to be denied.

### *RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT*

Accordingly, the magistrate judge recommends that the petitioner's motion for temporary injunctive relief be denied; that the respondents' motion to dismiss be granted; that the petitioner's request for costs, attorneys' fees, and expenses be denied; and that the petition be dismissed.

Any party may file specific written objections to this report within fourteen (14) days of the date it is filed in the office of the Clerk. Any objections filed must specifically identify the findings in the magistrate judge's recommendation to which the objections pertain. Frivolous, conclusive, or general objections will not be considered by the District Court. Failure to file written objections to the proposed findings and recommendations of the magistrate judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir.1982). A copy of the objections must be served upon all other parties to the action.

The Clerk is DIRECTED to serve a copy of this Report and Recommendation upon the counsel for the petitioner and counsel for the respondent.